**STATE of Tennessee, Appellee,**

v.

**Charles Aaron BUTLER, and James E. Riggins, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 1, 1990.

Permission to Appeal Denied by Supreme Court June 11, 1990.

Mark G. Rothberger (at trial and on appeal), Chattanooga, for appellant Riggins.

Timothy Deere (at trial), John McCarthy (at trial), Larry Campbell (at trial), Randall L. Russell (on appeal only), Jerry H. Summers (on appeal only), Chattanooga, for appellant Butler. ·

Charles W. Burson, Atty. Gen. and Reporter, C. Anthony Daughtrey, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Stephen M. Bevil, Jerry S. Sloan, Asst. Dist. Attys. Gen., Chattanooga, for State of Tenn.

## OPINION

WADE, Judge.

The defendant, Charles Aaron Butler, was convicted of the following offenses for which he received an effective Range II sentence of 80 years:

(1) aggravated assault, an especially aggravated offense; as a persistent offender, he received a Range II sentence of 10 years;

(2) first degree burglary while using a firearm, an especially aggravated offense; as a persistent offender, he received a Range II sentence of 15 years, enhanced to 20 years because of the firearm, to be served consecutively;

(3) robbery by the use of a deadly weapon, an especially aggravated offense; as a persistent offender, he received a Range II sentence of 50 years, to be served consecutively to the other two convictions.

The defendant, James E. Riggins, received an effective, Range I sentence of 45 years for the following offenses:

(1) aggravated assault, Range I standard offender, five years;

(2) first degree burglary while using a firearm, Range I standard offender, 10 years enhanced to 15 years because of the firearm, to be served consecutively;

(3) robbery by the use of a deadly weapon, Range I standard offender, 25 years, to be served consecutively.

In this appeal, the defendants challenge the sufficiency of the evidence and present the following additional issues:

(1) whether Butler's motion for a severance should have been granted;

(2) whether Butler's motion for a continuance was improperly denied;

(3) whether evidence seized incident to the arrest was obtained in violation of the defendants' fourth amendment rights;

(4) whether the in-court identifications of the defendants were improperly admitted into evidence;

(5) whether the state exercised its peremptory challenges in violation of the defendants' fourteenth amendment rights;

(6) whether Butler was denied the effective assistance of pre-trial counsel;

(7) whether the defendants were properly sentenced.

The defendants' convictions are affirmed; the sentences are modified. We calculate Butler's modified, effective sentence as one of 75 years; Riggins' is 40 years.

In the early morning hours of June 18, 1987, two men broke into the residence of George and Clara Freeman. When Mrs. Freeman resisted their attempt to enter her bedroom, one of the men struck her in the mouth, eye, and head with the butt of a pistol. The burglars bound the couple, ransacked the house, and threatened to shoot their victims. Over $15,000.00 in jewelry, checks and money had been taken from the Freeman home.

During a lineup at police headquarters, Mrs. Freeman identified Riggins as one of the burglars but could not identify Butler. Her husband was able to identify Butler but not Riggins. At trial, however, Mr. Freeman identified both defendants.

On the evening before the break-in, the victims' son and daughter-in-law saw Riggins, in the accompaniment of Butler, driving a white Lincoln Continental around the Freeman's produce market. Each noted that the car's license plate started with "CHZ."

Three days later a police officer, investigating a suspicious vehicle complaint, encountered Riggins driving a white Lincoln Continental bearing license plate number "CHZ 733." Butler was a passenger in the car. Riggins, wearing a gold chain taken from the victims' house, identified himself as Charles Hutchins. Ultimately, Riggins confessed to his involvement.

Crime Lab detectives were unable to find any fingerprints at the victims' house which matched either defendant. It could not determine the type from a blood stain found on Riggins' gun.

An alibi witness testified that Butler was with her the night of the burglary.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 836 (Tenn.1978). The verdict of guilt removes the presumption of innocence and gives rise to a presumption of

guilt. *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973).

This court, in reviewing the evidence in the light most favorable to the state, must conclude that a rational trier of fact could have found beyond a reasonable doubt that the defendants' broke into the Freeman residence at night, beat Mrs. Freeman, and took jewelry from the residence. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Tenn.R.App.P. 13(e).

# I

■ Butler claims that he should have been tried separately because Riggins' confession was introduced in violation of his sixth amendment right of confrontation. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Under these circumstances, Rule 14(c) of the Tennessee Rules of Criminal Procedure permits either a severance or a redaction of the co-defendant's statement. Tenn.R. Crim.P. 14(c)(1)(ii). The trial court chose the latter option, removing any mention of Butler from Riggins' confession. *See State v. Coleman,* 619 S.W.2d 112 (Tenn. 1981); *Hunter v. State,* 222 Tenn. 672, 440 S.W.2d 1 (1969). We find no abuse of the discretion permitted the trial court. See *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). At most, the co-defendant's statement implied that Riggins did not act alone.

■ This conclusion does not end our inquiry, however. During closing arguments, the state asked the jury to consider Riggins' confession as a means of refuting Butler's argument for acquittal:

> For example, he [Butler's counsel] says it's a reasonable doubt going toward Mr. Butler's credit that they didn't find his fingerprints. Sounds good until you examine it. They didn't find Mr. Riggins' fingerprints in that home, and Mr. Riggins admitted to the detectives that he was there and he got the necklace out of the home.

By this comment, "the prosecutor sought to undo the effect of the limiting instruc-

tion by urging the jury to use [Riggins'] confession in evaluating [Butler's] case." *Marsh,* 107 S.Ct. at 1709.

The state concedes the argument was improper but claims that the error was waived when Butler failed to object or present the issue on appeal. Tenn.R. App.P. 36(a). Alternatively, the state submits that the error was harmless. Tenn.R. App.P. 36(b).

This court may consider plain error when the error affected "the substantial rights of an accused." Tenn.R.Crim.P. 52(b); *State v. Maynard,* 629 S.W.2d 911 (Tenn. Crim.App.1981). Although not every *Bruton* violation requires reversal under the doctrine, they are particularly appropriate subjects of plain error analysis. *State v. Ogle,* 666 S.W.2d 58, 61 (Tenn.1984); *see Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

In order to reverse on this ground, however, we must find that

(1) the statement constitutes plain error;

(2) the statement was an important part of the state's case; and

(3) the objection was not intentionally waived for tactical purposes.

666 S.W.2d at 60.

Although there is no indication Butler intentionally waived the issue for tactical purposes, it is clear that Riggins' statement was not critical evidence. There was positive testimony that Butler was a participant in the burglary. Mr. Freeman unhesitantly identified Butler from police lineup. Circumstantial evidence strongly suggested his participation in the offenses. The instruction provided the jury by the trial court precluded any consideration of Riggins' confession in their deliberations of the charges against Butler.

In our view, the state's improper argument was harmless beyond a reasonable doubt.

# II

■ When personality conflicts developed between the two, Butler's trial counsel sought permission to withdraw six days before trial. The trial court denied this

motion, appointed Butler with co-counsel, and refused to permit a continuance. As a consequence, Butler claims that he was denied his right to effective assistance of counsel.

The grant or denial of a motion for continuance rests within the sound discretion of the trial judge. His determination will not be overturned unless there is a clear showing of abuse of that discretion. *Woods v. State*, 552 S.W.2d 782 (Tenn. Crim.App.1977); *Frazier v. State*, 3 Tenn. Crim.App. 696, 466 S.W.2d 535 (1970). This court will only order a reversal if it is convinced that the complaining party did not have a fair trial and that a different result might reasonably have been reached had the continuance been granted. *Maxwell v. State*, 501 S.W.2d 577 (Tenn.Crim. App.1973).

Two other attorneys had been granted permission to withdraw as Butler's counsel. Neither could get along with their client. The trial court found Butler's refusal to cooperate at least part of the problem and refused to allow his third attorney to withdraw. Co-counsel, who had represented Butler at the preliminary hearing on these charges, was appointed as a "go-between."

While a defendant has a right to the effective assistance of counsel during his trial, this right cannot be asserted in a manner which will obstruct the orderly procedures of the court. *State v. Zyla*, 628 S.W.2d 39, 41 (Tenn.Crim.App.1981). The record does not suggest that the trial judge abused his discretion in overruling the defendant's motion for a continuance. We do not believe that the results would have been different even had the continuance been granted.

This issue is without merit.

## III

Each defendant claims that the trial court should have suppressed two pistols, a gold chain belonging to the victim, and the registration for the Lincoln automobile.

Three days after the burglary, the defendants and two others were in two cars parked near a video rental store at closing time. The store's proprietor became suspicious and had a friend call the police. Several officers arrived on the scene and one asked to see Riggins' driver's license. When Riggins said that he did not have his license or any identification in his possession, the officer told him that if everything "checked out" they would be free to leave.

After a vehicle registration check, the officer told Butler (who had his driver's license) that he would have to remove the car from the parking area. As Butler started to get out of the passenger's side of the car, he dropped his hands. Butler told the officer that he had hurt his neck and asked for assistance. When the door was opened, the officer observed a gun visible in the back floorboard which, if Butler had continued his movement, he would have been able to retrieve. While a second officer seized the gun, the investigating officer grabbed Butler. Both defendants were placed under arrest for possession of a weapon with intent to go armed.[1]

The essential question here, as in any fourth amendment case, is whether, at the moment of the seizure, the officers were legally entitled to act on the information they legitimately possessed. Unless a defendant's rights have been previously violated, the subsequent search and seizure is valid.[2] *Hughes v. State*, 588 S.W.2d 296, 303 (Tenn.1979).

In *Hughes*, the Supreme Court suppressed evidence as illegally acquired when the defendant refused to roll down his car window after the officer requested identification. 588 S.W.2d at 298; *Cf. State v. Hughes*, 544 S.W.2d 99 (Tenn.1976). There

---

1. Riggins and Butler were convicted in Bradley County Criminal Court for possession of burglary tools. They did not appeal this conviction. *See State of Tennessee v. Delta Lee Eady & Paul Bridges*, C.C.A. No. 263 Bradley, slip op. at 4, 1989 WL 19674 (Tenn.Crim.App.Knoxville, March 8, 1989).

2. Neither here nor below did the state challenge either defendants' standing to contest the search. *See State v. White*, 635 S.W.2d 396 (Tenn.Crim.App.1982).

is no suggestion in this record that Riggins had to roll down his car window in order to comply with the officer's request for identification. Our inference is that the act, if necessary at all, was voluntary.

There was, under these circumstances, no requirement that the officer have reasonable suspicion of illegal activity. An officer may legitimately approach a vehicle parked in a public place and make a request for identification of the driver. *See Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 1981, 100 L.Ed.2d 565 (1988) (citing *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); 3 LaFave *Search and Seizure*, § 9.2(h) n. 230 (1987).

We believe *Hughes* is distinguishable. In that case, the defendant refused to open his car window; the officer's order that he do so constituted an impermissible intrusion.

When the officer conveyed an intent to detain Riggins until everything "checked out," the defendant was seized within the meaning of the fourth amendment. *Chesternut*, 108 S.Ct. at 1980 n. 7. In our view, the officer at that time possessed a reasonable suspicion based on articulable facts that Riggins was involved in criminal conduct. *Hughes*, 588 S.W.2d at 303.

The defendants' car had been sitting in a parking lot posted against loitering from one to two hours. It was late at night and the business had closed. The proprietor had observed the car in the lot and made a complaint to the police. The officer only detained Riggins when she learned that he was not in possession of a valid driver's license. Because a person must have a driver's license in his possession when operating a vehicle, the officer acted within her authority by refusing to let Riggins drive the vehicle away.

From then until the point of arrest, the officers conduct was reasonable. When the officer discovered Butler had a valid operator's license, he was given permission to drive the vehicle off the lot. When the police saw a pistol within Butler's reach, they had a reasonable basis to search the car's passenger compartment. *See Michi-gan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

Because the officers had probable cause to arrest both defendants for possession of a weapon with intent to go armed, the search of the passenger compartment may also be upheld as a search incident to arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Foote*, 631 S.W.2d 470, 472 (Tenn. Crim.App.1982).

Each of the items, in our view, were lawfully seized from Riggins' vehicle.

## IV

■ Both defendants contend that they were denied their sixth amendment right to counsel during a lineup conducted after their arrest. Butler also claims that the lineup was unduly suggestive.

A defendant has the right to counsel at all " 'critical' stages in the criminal justice process 'where the results might well settle the accused's fate and reduce the trial itself to a mere formality.' " *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) (quoting *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967)); *State v. Mitchell*, 593 S.W.2d 280, 286 (Tenn. 1980).

> Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him.

*Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977).

In Tennessee, an arrest warrant, or a preliminary hearing if no arrest warrant is issued, or an indictment or presentment, when the charge is initiated by the grand jury, marks the initiation of criminal charges to which the sixth amendment right to counsel attaches. *Mitchell*, 593 S.W.2d at 286. Among the "critical" stages of the criminal justice process is a corporeal lineup. *Id.* at 287; *Moore v. Illinois*, 434 U.S. 220, 229, 98 S.Ct. 458, 465,

54 L.Ed.2d 424 (1977); *Wade,* 388 U.S. at 229, 87 S.Ct. at 1933.

Because no formal criminal charges for these offenses had been initiated against the defendants, neither had an unconditional right to have counsel present. *Mitchell,* 593 S.W.2d at 287; *see United States v. Gouviea,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). This is the rule even though the accused is in custody on other charges. *State v. Barker,* 642 S.W.2d 735, 739 (Tenn.Crim.App.1982); *see Mitchell,* 593 S.W.2d at 287.

The circumstances in this case illustrate the reason for this rule. The burglary was committed in the Chattanooga area. The defendants were arrested in Cleveland, Tennessee some three days later. Because the perpetrators' identities were still unknown to the Chattanooga police, no formal charges were pending in Chattanooga at the time of their arrest. The apparent purpose of the lineup was to ascertain whether the defendants were legitimate suspects in the Freeman burglary. If not identified by the victims, there were no grounds for arrest.[3]

█ We disagree with Butler's assertion that the photographic lineup was unduly suggestive. The record establishes close similarities in the age, build, complexion, hair and eye color of all but one of the participants. All were dressed in the orange jail garb. Consequently, it is unnecessary to apply the totality of the circumstances test described in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Butler also contends that the trial court erroneously limited his suppression hearing cross-examination of the officer who conducted the lineup. In an attempt to establish prejudice, Butler's counsel questioned the detective who conducted the lineup about the descriptions provided by the victims before the lineup. Because the lineup had not been found to be suggestive, the trial court limited the examination. Under

these circumstances, we believe the trial court acted within its discretion.

This issue has no merit.

### V

Both defendants challenge the trial court's ruling finding that they had not established a *prima facie* case of purposeful discrimination in the state's use of its peremptory challenges.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the prosecutor's use of peremptory challenges to intentionally exclude jurors of the defendant's race violates his right to equal protection under the fourteenth amendment to the U.S. Constitution. See Art. 1, § 9, Tenn. Const. When the defendant is able to establish a *prima facie* case of purposeful discrimination against prospective jurors from his own race, the prosecution must then come forward with a neutral explanation for the challenge of these jurors. *Id.* at 97, 106 S.Ct. at 1723. This explanation must be more than an assumption that black jurors will be biased simply because the defendant is black. On the other hand, the explanation does not have to rise to the level justifying a challenge for cause. It is then the trial court's responsibility to determine whether there has been a purposeful discrimination on the part of the state. *Id.* at 98, 106 S.Ct. at 1724. *See State v. Bell,* 745 S.W.2d 858 *after remand* 759 S.W.2d 651 (Tenn.1988).

To establish a *prima facie* case of purposeful discrimination in the selection of the jury, each defendant must first show that he is a member of a cognizable racial group and that the prosecution has exercised peremptory challenges to remove from the venire members of the defendants' race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. In this case, the defendants are black and the record reflects that, of the eight peremptory challenges available, the state exercised only four challenges, each of which removed a black from the

---

**3.** This is determinative of Butler's contention that his waiver of the right to counsel was invalid. There is no requirement that the waiv-

er be in writing when the right to counsel has not yet matured. *State v. Mitchell,* 593 S.W.2d at 287.

venire. The jury was composed of 10 whites and two blacks.

Finally, the defendant must show that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude [certain of] the veniremen from the petit jury on account of their race." *Id.* at 96, 106 S.Ct. at 1723. A trial court should look to the "totality of the relevant facts" to determine whether the state's use of peremptory challenges gives rise to an inference of discriminatory purpose. *Bell,* 759 S.W.2d at 653.

Here, the trial court found that the defendants had not established a *prima facie* case based solely on the fact that the state had four peremptory challenges remaining and there were two members of the defendants' race on the petit jury. While that may have been the announced basis of the ruling, we find other factors present supporting that threshold conclusion.

■■■■ The appropriate standard of review for cases where the trial court concludes that a defendant has not established a *prima facie* case of purposeful discrimination is a question left unresolved by *Bell.* *Batson* noted that a trial court's finding of intentional discrimination is entitled to "appropriate deference by a reviewing court." 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21.

*Batson* was based on Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e et seq. (1982). The Court suggested that those cases "have explained the operation of *prima facie* burden of proof rules." 476 U.S. at 94 n. 18, 106 S.Ct. at 1721–22 n. 18. The federal courts treat the *prima facie* determination as a question of law rather than one of fact; "the question is one of legal sufficiency, and an appellate court's review is plenary." *Hill v. Metropolitan Atlanta Rapid Transit Authority,* 841 F.2d 1533, 1538 (11th Cir.1988). In *Gay v. Waiters' and Dairy Lunchmen's Union,* 694 F.2d 531 (9th Cir. 1982), the court held that whether the "proof established a *prima facie* case thus shifting the burden ... is a legal conclu-

sion freely reviewable on appeal." *Id.* at 540. When the trial court's findings are based on the credibility of witnesses, however, the standard of review is whether the decision was clearly erroneous. *Sherpell v. Humnoke School District No. 5 of Lonoke County,* 874 F.2d 536, 539 (8th Cir. 1989); *Barnes v. Small,* 840 F.2d 972, 976 (D.C.Cir.1988).

Whether the defendant met its obligation to make a *prima facie* showing of purposeful discrimination is, in this case, subject to plenary review. While the trial court's observation that the jury included two members of the defendants' race and the state had peremptory challenges remaining which it could have exercised to exclude them is an important factor, *e.g., United States v. Sangineto-Miranda,* 859 F.2d 1501, 1522 (6th Cir.1988), that fact alone does not, in our view, insulate the state's action from a due process challenge. *Batson* requires an examination of the totality of the circumstances on the issue of purposeful discrimination.

■■■■ Here, the defendants were black; the victims were white. *See Bell,* 745 S.W.2d at 867. Each of the state's peremptory challenges removed members of the defendants' race from the panel. Two blacks remained on the panel. Probably because he was a former policeman, a third potential black juror was peremptorily challenged by the defendants. Our review of the record of the *voir dire* is inconclusive; a purposeful design of discrimination is not evident from the questions presented. One of the prospective jurors challenged by the state had a brother who had been convicted of burglary only a few years before. A second was indirectly acquainted with one of the defense lawyers. A third had likely had some previous problem with the police. Although no discernible reason appears for the exclusion of the fourth, we note that there may be satisfactory reasons for exclusion not appearing in the record.[4]

Although certainly a close issue, we do not believe that these facts raise an infer-

---

4. The state, for example, may consider a potential juror's body language as a basis for a per-

emptory challenge. *E.g., State v. Hood,* 245 Kan. 367, 780 P.2d 160, 166 (1989).

ence of purposeful discrimination sufficient to establish a *prima facie* case. While it may have been a better practice under the circumstances for the trial court to have examined the state's rationale for the challenges, we find no clear inference of purposeful discrimination. The state was content, for example, with as many as three black jurors. Neutral reasons appear in the record for the exclusion of at least three others.

This issue has no merit.

### VI

Butler claims that his pre-trial and trial counsel were ineffective by failing to investigate his case. The state asserts that this issue is not properly before this court because there was no evidentiary hearing conducted on this issue.

When a record transmitted to this court is incomplete and does not contain a record of the proceedings relative to an issue presented for review, we are precluded from considering the matter. *State v. Groseclose*, 615 S.W.2d 142 (Tenn.1981); *State v. Jones*, 623 S.W.2d 129 (Tenn.Crim.App. 1981).

### VII

Both defendants claim they were improperly sentenced.

The trial court enhanced each defendant's sentence for armed burglary by five years pursuant to Tenn.Code Ann. § 39-6-1710 (use of a firearm during a felony). In *Walker v. State*, 606 S.W.2d 531, 533 (Tenn.1980), our Supreme Court held that armed burglary is an offense which may not be enhanced by § 39-6-1710. While neither defendant raised this issue at sentencing or in their motion for new trial, the state concedes the error. In our view, the trial court committed plain error by imposing a sentence above the statutory maximum. Tenn.R. Crim.P. 52; *State v. Mahler*, 735 S.W.2d 226, 228 (Tenn.1987). Accordingly, Butler's armed burglary sentence is reduced to 15 years; the appropriate sentence for Riggins is 10 years.

■■ Butler maintains that two of his convictions were not especially aggravated offenses. The state's notice of intent to seek enhanced punishment was filed prior to the state's voluntary dismissal of the first indictment. Because the state did not file its notice after the second indictment, the defendant contends he should have been sentenced as a Range I standard offender.

In *Crump v. State*, 672 S.W.2d 226 (Tenn.Crim.App.1984), this court held that the state was not required to file notice of its intention to seek enhanced punishment when the defendant had actual notice of the state's intent to seek Range II punishment. That reasoning applies in this instance. No prejudice resulted. *See State v. Stephenson*, 752 S.W.2d 80 (Tenn.1988). Butler admitted that he was on parole at the time he committed these offenses. We find no indication that the state, by its actions, purposefully misled him on the issue of enhanced punishment.

■■ Riggins argues that his sentences should not have been stacked. In our view, this defendant is both a multiple and persistent offender; Riggins argues for relief on the basis that he does not qualify as a dangerous offender. *See Gray v. State*, 538 S.W.2d 391 (Tenn.1976).

When a defendant challenges the length, range or manner of service of his sentence, it is the duty of this court to conduct a *de novo* review of the sentence without a presumption of correctness. Tenn.Code Ann. § 40-35-402(d) (Supp.1988); *State v. Moss*, 727 S.W.2d 229, 239 (Tenn.1986); *State v. Smith*, 735 S.W.2d 859, 863 (Tenn.Crim. App.1987).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the pre-sentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of poten-

tial for rehabilitation or treatment. *Smith,* 735 S.W.2d at 863.

The state maintains that Riggins is a dangerous offender because the defendant treated his victim with "exceptional cruelty" during the commission of the offense and that, consequently, consecutive sentencing is appropriate.

In *Gray,* the Supreme Court held that consecutive sentences should be reserved for, among other things, the dangerous offender: "[if] the crimes for which he is convicted indicate that [the defendant] has little or no regard for human life, and no hesitation about committing a crime when the risk to human life is high," the perpetrator may be classified as a dangerous offender. *Gray* 538 S.W.2d at 393.

> This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed. However, this does not preclude the trial court from imposing consecutive sentences for the commission of dangerous offenses where no aggravating circumstances are present if evidence indicates that the defendant should be sentenced under one of the other classifications.

*Id.*

Each of the crimes for which Riggins was convicted was enhanced by the use of a weapon. *Gray* directs that we find the presence of other aggravating factors in order to justify the dangerous offender designation. We find none.

The circumstances of these offenses, however, suggest that the defendant is hardly deserving of leniency. His prior record includes five felonies and two misdemeanors; two of the offenses involve actu-

al violence to another person.[5] He had no hesitation about committing these offenses when the risk to life was great. While Riggins is not a dangerous offender, he qualifies under *Gray* as both a multiple and persistent offender. We find no reason, therefore, to disturb the consecutive nature of the sentences.

The defendants' convictions are affirmed; the sentences are modified as provided.

DUNCAN, P.J., and BYERS, J., concur.

---

5. The state did not seek enhanced Range II punishment for Riggins.