IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE

**FILED**

STATE OF TENNESSEE,

    Plaintiff-Appellee,

v.

BRIAN DANIEL,

    Defendant-Appellant.

January 31, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

)
)
)
)
)
)
)
)
)
)
)

**FOR PUBLICATION**

**Filed: January 31, 2000**

Knox Criminal

Hon. Richard Baumgartner,
Judge

No. E1997-00142-SC-R11-CD

---

## CONCURRING/DISSENTING OPINION

I concur in the judgment reached by the majority in this case. I would, however, hold that for purposes of the Fourth Amendment to the United States Constitution and Article 1, section 7 of the Constitution of the State of Tennessee a seizure occurred when the officer asked the defendant for his identification rather than, as the majority holds, when the officer retained the identification for a records check.

Additionally, my framing of the issue differs from that of the majority in that I believe the correct question is whether a police officer may approach a citizen and require that person to produce identification when the officer has no reasonable basis for the approach.[1]

I believe this case should be decided in accordance with the rulings of the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), for federal constitutional analysis and under this court's holding in *Hughes v. State*, 588 S.W.2d 296 (Tenn. 1979), for state constitutional analysis. I have found no suggestion that the federal cases cited by the majority have overruled *Terry v. Ohio* or *Brown v. Texas;* nor, do I find any suggestion that the Tennessee cases cited by the majority have overruled *Hughes v. State*.

I come to this conclusion because the facts in the case before us, for purposes of constitutional analysis, are practically the same as those of the *Brown* case. *Brown v. Texas,* 443 U.S. at 48-9. The facts in the cases cited by the majority are significantly

---

[1] The evidence shows a police officer was on patrol on August 16th at approximately 9:00 p.m. in an area he did not normally patrol and with which he was unfamiliar. The sun was going down and it was dusky dark. He saw four young men standing around a vehicle on the end of a 7-11 parking lot which was not well-lighted and thought that was peculiar. He approached the people and asked them to produce identification. The officer did not testify to any objective facts to show a reasonable basis to suggest the people were involved in any wrongdoing.

1

different–which leads me to believe the United States Supreme Court would adhere to the holding in *Brown v. Texas* and would not nullify *Terry v. Ohio* based upon these facts.

In *Brown v. Texas*, officers on patrol saw Brown and another man walking away from one another in an area of high incidence of drug traffic. *Id.* The officers stopped Brown, asked him to identify himself and explain what he was doing. One officer testified he stopped Brown because he "looked suspicious and [the officers] had never seen the subject in that area before." *Id.* at 49. The officer did not claim to suspect Brown of any misconduct, nor did either officer have any reason to believe Brown was armed. *Id.*

Brown refused to identify himself and was arrested and charged with violation of a Texas statute criminalizing such refusal to provide identification to an officer "who has lawfully stopped him and requested the information." *Id.* The United States Supreme Court held:

> In the absence of any basis for suspecting [Brown] of misconduct, the balance between the public interest and [Brown's] right to personal security and privacy tilts in favor of freedom from police interference. The Texas statute under which [Brown] was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. *See Delaware v. Prouse,* [440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)].
>
> The application of [the Texas statute], to detain [Brown] and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe that [Brown] was engaged or had engaged in criminal conduct. Accordingly, [Brown] may not be punished for refusing to identify himself, and the conviction is reversed.

*Brown v. Texas,* 443 U.S. at 52.

The factual scenario in the case before us is as cogent as the facts in *Brown* for the purpose of holding as I would that the seizure in this case occurred when the officer asked Daniel and the others to supply identification.

In *Hughes v. State,* 588 S.W.2d at 296, a police officer went to a store at the owner's request. The owner thought a man in the store–Neese–appeared suspicious because he remained in the store after the man he rode with–Hughes–drove away. The police seized Neese and went in search of Hughes, whom they located as he drove up an interstate approach ramp. *Id.* at 300.

Hughes voluntarily drove to the store where the episode began. An officer then approached Hughes's vehicle and asked Hughes to show his driver's license. It is unclear whether the officer asked Hughes to roll down the car window; however, the opinion

2

indicates the officer did so.

When the window was rolled down, the officer smelled marijuana. Hughes was arrested and subsequently convicted for possession of marijuana. In reversing the conviction and dismissing the charge, this court stated:

> There is not the slightest suggestion in the record that Hughes had violated, was violating, or was about to violate any law. None of the criteria of *Delaware v. Prouse* . . .was present to cause him to be brought under scrutiny. He was not in a high crime area; there was nothing in his behavior to suggest law violation; the officers had not seen any traffic violations; and there was nothing about the vehicle to incite suspicion.
> As Judge Daughtrey phrased it in dissent:
> Thus, the controlling question is whether the officer had a constitutionally valid basis for making the original intrusion into the privacy of an individual who had given the officer absolutely no reason to suspect that he was engaged in any criminal activity.
> The answer is evident; the intrusion was illegal and impermissible. As held in *Brown v. Texas* . . . "none of the circumstances preceding the officers' detention justified a reasonable suspicion that he was involved in criminal conduct."

*Hughes v. State,* 588 S.W.2d at 308 (citation omitted).

There is not the slightest suggestion in this case that Daniel had violated or was about to violate the law when the officer requested that Daniel produce his identification.

The federal and state cases cited by the majority are distinguishable from this case and *Brown* and *Hughes*. The evidence in the cases cited by the majority shows the initial intrusion by the police officer was supported by articulable facts which would give rise to a reasonable or well-founded belief that a crime was being or was about to be committed. The same is not true in this case or in *Brown* or *Hughes*.[2]

For the most part, the significant cases cited by the majority involved drug interdiction efforts and occurred in places of public conveyance. The approach of the officers in those cases was based upon the presence of facts indicating the defendants in question fit drug profiles established to alert officers to potential drug traffickers at work.

The drug profile, established by experienced officers observing the conduct of people involved in drug trafficking, has generally been recognized as sufficient to give a reasonable

---

[2] Footnote 5 of the majority opinion states *Brown v. Texas* is distinguishable from this case because the officer failed to recognize that a citizen has the right to walk away. The *Brown* court held the confrontation with Brown was constitutionally impermissible because "without any specific basis for believing he [was] involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits." *Brown v. Texas,* 443 U.S. at 52.

In footnote 5, the majority also says *Hughes v. State* is distinguishable because the seizure occurred when Hughes was directed to drive back to the store. The Hughes opinion does not speak of Hughes being directed to drive back to the Country Store. The entire focus of the case's Fourth Amendment issues centered around the conduct of the officer at the Country Store. The court based its ruling upon this conduct.

indicia of objective assessment by officers relying on the profile. Reliance on the objective criteria prepared in an administrative setting separates constitutionally permissible intrusions from intrusions based on mere unsupported suspicions of an officer, which threaten the constitutional rights of citizens. In short, the profiling procedure preserves the ability of the police to carry out their duties without unreasonable interference in the rights of citizens.

When the facts in the line of cases cited by the majority[3] are reviewed and compared to *Brown v. Texas and Hughes v. State*, a clear and distinct difference emerges. In each of the cases cited by the majority, the facts show a reasonable suspicion of wrongdoing by the defendant.[4]

In *Florida v. Royer,*[5] 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983): *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), the United States Supreme Court had the opportunity to overturn *Brown v. Texas* and did not do so.

If police officers may approach citizens under circumstances shown in this case, it means that citizens may at any time and any place for any reason or no reason whatsoever be stopped by the police and asked what they are doing and who they are. I find this notion intolerable in a government such as we have created where we each have appropriated unto ourselves the right to be free of unreasonable interference into our most basic freedom to go where we wish and retain the right to do so anonymously, i.e. to protect who we are, unless the state shows a reasonable basis for intruding upon these rights.

These cases, like all search and seizure cases, must be decided on the factual bases of each case. However, when the facts in the case under consideration so closely fit the facts of *Brown v. Texas* and *Hughes v. State*, it seems clear that the court should hold the seizure occurred when the officer demanded that Daniel show his identification.[6]

---

[3] *State v. Crutcher*, 989 S.W.2d 295 (Tenn. 999) (the case was based on an inadequate search warrant); *State v. Pulley*, 863 S.W.2d 29 (Tenn.1993)(the case was reversed because the police officer stopped the vehicle without probable cause to do so); *State v. Butler,* 795 S.W.2d 680 (Tenn. Crim. App. 1990) (distinguished the *Hughes* case on the facts).

[4] In *Bostick*, the issues did not concern the police's initial approach itself, but rather the place of the approach. Additionally, *Crutcher* was decided on a probable cause basis premised on a search and seizure issue, not a *Terry*, *Brown*, or *Hughes* type issue.

[5] Although it may seem far-fetched that police officers or other state officials would engage in or order widespread sweeps to check the identification of vast numbers of citizens for no reason, such city-wide identification checks could conceivably occur under the rule adopted by the majority position. A rule that could be (mis)used to sanction such unintended consequences should be considered to fall outside the constitutional pale.

[6] In footnote 7, the majority opinion stresses, in spite of the concurring opinion's assertions, that they are not holding police may approach any citizen at any time, regardless of the circumstances, and demand the citizen show identification.

If that is an option reserved in the majority opinion in this case when the state conceded the officer lacked any reasonable suspicion to support a seizure or probable cause

Allowing police officer's to require people to show their identification absent a reasonable basis to do so serves no legitimate police function–allowing police officers to require people to show their identification when the officers have shown a reasonable basis for the request does.[7]  By requiring officers to show a reasonable basis to support the conduct, the constitutional rights of individuals are preserved and legitimate police function is not impeded.

The potential for abuse is inherent in authority; unchecked it can be oppressive: by allowing police officers the right to intrude upon a citizen or group of citizens at any time or any place and require them to show identification without any reason to do so creates an atmosphere in which abuse and oppression can thrive.

I would hold they do not have this authority because the right to go lawfully about one's business and the right to privacy in one's identity is protected by the Fourth Amendment to the United States Constitution and Article 1, section 7 of the Constitution of the State of Tennessee.  To allow police officers to confront citizens and require them to show identification without any reason to do so sets the balance of the right of the citizen vis à vis the needs of the police to act seriously askew.  To give police authority to do so serves no legitimate police function.  To deny the authority deters no legitimate police function.

I am authorized to state that Justice Birch joins in this concurring/dissenting opinion.

_____
John K. Byers, Special Justice

---

to support a search, and where the officer testified to no articulable facts to show such circumstances, then that option should be exercised.

The belief by the police officer that is was "peculiar" to see four young men standing around a vehicle at a time when it was "dusky dark" does not support a reasonable suspicion the men were engaged in criminal activity.  Further, the officer did not testify that when he arrived at the men's location he observed anything to cause him to believe unlawful activity was afoot.  This case meets the *Brown v. Texas* and *Hughes v. State* prohibition against Fourth Amendment violations by the state.

[7]If the police can do nothing with the identification under these circumstances, the intrusion serves no useful police purpose, prohibiting this type of conduct does not deter legitimate police function.