# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MARCH 1999 SESSION

FILED

July 1, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | C.C.A. #01C01-9712-CC-00589 |
| Appellee, | * | RUTHERFORD COUNTY |
| V. | * | Honorable J. S. Daniel, Judge |
| **DARRICK WATKINS,** | * | (Sale of Cocaine) |
| Appellant. | * | |

FOR THE APPELLANT:

GUY R. DOTSON, JR.
102 South Maple Street
Murfreesboro, TN 37130

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM C. WHITESELL, JR.
District Attorney General

PAUL A. HOLCOMBE, III
Assistant District Attorney General
20 North Public Square, Suite 303
Murfreesboro, TN 37130

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

The defendant, Darrick Watkins, appeals from a Rutherford County jury verdict convicting him of the sale of less than .5 grams of cocaine, a Class C felony. See Tenn. Code Ann. § 39-17-417(a), (c)(2). The trial judge sentenced the defendant to eleven years in the Tennessee Department of Correction, to be served consecutively to sentences on two prior convictions for the sale of controlled substances. On this appeal, the defendant argues (1) that the evidence at trial was insufficient to support the jury's finding of guilt and (2) that the trial court erred in denying his motion for a new trial based on the state's allegedly discriminatory use of a peremptory challenge during jury selection. The state cross-appeals, arguing that the trial court failed to accord sufficient weight to certain enhancement factors and, therefore, that the defendant's sentence does not appropriately reflect the seriousness of his offense. We AFFIRM the judgment of the trial court in all respects.

## BACKGROUND

As part of an undercover drug sting, the Smyrna Police Department paid an informant, Terry Harrison, to purchase cocaine from the defendant. Prior to the transaction, Detective Robert Jacobs met with Harrison and searched her car and person. Jacobs then outfitted Harrison with an audio transmitter and instructed her to contact the defendant and attempt to purchase crack cocaine from him. Jacobs followed Harrison to her meeting with the defendant, where she conducted the purchase as planned. Although Jacobs was unable to maintain visual surveillance of the transaction, he did hear and record the audio transmission of the transaction. Immediately following the transaction, Jacobs followed Harrison to a prearranged meeting point, keeping her in sight the entire time. Harrison then delivered her purchase to Jacobs. The purchased

substance was submitted to the Tennessee Bureau of Investigation and, after testing, was determined to be .2 grams of cocaine.

At the defendant's trial, the state introduced the audio recording of the transaction between Harrison and the defendant. Harrison then identified the defendant, testified to the transaction with him, and identified his voice on the recording.

The defense presented two witnesses who testified that they were familiar with the defendant's voice and that the voice on the recording was not his. Rather, each of these witnesses asserted that the recorded voice was that of the other witness.

## SUFFICIENCY OF EVIDENCE

The defendant first asserts that the evidence at trial was insufficient to support his conviction. When a defendant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). The appellee is entitled to the strongest legitimate view of the evidence and to all reasonable inferences that may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). A jury verdict for the state

accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a guilty verdict removes the presumption of innocence enjoyed by defendants at trial and replaces it with a presumption of guilt. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, an appellant challenging the sufficiency of the evidence carries the burden of illustrating to this Court why the evidence is insufficient to support the verdict. See State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

The defendant has not carried this burden. The defendant asserts that the state failed to sufficiently identify him as the person who sold cocaine to Harrison. He relies primarily on the testimony of two defense witnesses that his was not the voice on the recording of the transaction, and he attempts to discredit Harrison's testimony to the contrary.

The resolution of conflicting evidence and the credibility of witnesses is a matter for the trier of fact; we will not revisit that issue here. The state presented competent direct evidence as to every element of the defendant's offense, and the jury was entitled to credit that evidence. This issue is without merit.

## BATSON CHALLENGE

The defendant next argues that the trial court erred in failing to grant a new trial based on the state's allegedly discriminatory use of a peremptory challenge. During voir dire of the jury, the state asked a potential juror, Annie Mae Gregory, whether, if the state proved its case, she could vote guilty knowing that the defendant could go to jail for up to fifteen years. Gregory originally replied, "Well, if he was going and learning some sense to leave it alone and go to work and make honest money." The state then asked a series of questions

illustrating that no one could know whether incarceration would rehabilitate the defendant and again asked Gregory whether she could vote guilty if the state proved its case. Gregory answered, "Maybe." On the state's third inquiry, Gregory stated that she could convict the defendant if the state proved its case.

With its fifth peremptory challenge, the state struck Gregory. The defense immediately objected, pointing out that the defendant is African-American and that Gregory was the only African-American member of the venire; impliedly asserting that the state's challenge was racially motivated. To this objection, the state responded as follows:

> GENERAL HOLCOMBE: First of all, I want to say for the record I resent [defense counsel's] implication, and that I'm even up here. I'm going to point out to the court two reasons [for the challenge to Gregory]. Number one—and they're related. I watched the way she answered my questions when I finally could hear her answer.[1] Her best answer originally was that she maybe could vote guilty. And I noticed the look on her face as she looked over directly at [the defendant] while she made that answer.
>
> And that brings up my second reason. She has a child about his age. In fact, she has two. One 22 and one 19. And I believe that has something to do with it. Her mother instinct as she looks at him sitting for trial there.

(footnote added). Following this explanation, the trial court overruled the defense's objection, specifically finding that the state's nonracial explanation was justified by responses in the record.

Following his conviction, the defendant renewed his assertion that the state's challenge of Gregory was racially motivated in his motion for a new trial. In response, the state reiterated that its challenge was based on Gregory's hesitance to state that she could convict the defendant, her body language, and her having children near the defendant's age. After taking the matter under

---

[1] The state had twice needed to ask Gregory to repeat her response to a question of whether any of the jurors had personally seen the effects of cocaine use.

advisement, the trial court found that the defense had established a prima facie case of purposeful discrimination. However, the court further found that the state's race-neutral explanation and an examination of all the relevant facts satisfactorily indicated a nondiscriminatory basis for the state's challenge.

In Batson v. Kentucky, 476 U.S. 79 (1986), the United States Supreme Court held that the state's use of a peremptory challenge to intentionally exclude jurors of the defendant's race violates the defendant's Fourteenth Amendment right to equal protection.[2] Under Batson, a prima facie case of purposeful discrimination may be established upon a showing that the defendant was a member of a "cognizable racial group," that the challenged juror is a member of the defendant's race,[3] and that all relevant circumstances raise an inference that the state challenged the potential juror because of his or her race. See id. at 96. If the defendant establishes a prima facie case, then the state must show a race-neutral reason for the challenge. See id. at 97. The state's explanation, however, need not rise to the level justifying a challenge for cause. In determining the issue, the trial court examines the "totality of the relevant facts." State v. Bell, 759 S.W.2d 651, 653 (Tenn. 1988). Such facts may include the number of members of the defendant's race that were excluded by the state, but see State v. Brown, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (cautioning that numbers alone are not conclusive); whether the state failed to exhaust its peremptory challenges while leaving members of the defendant's race on the panel, see State v. Butler, 795 S.W.2d 680, 687 (Tenn. Crim. App. 1990); or whether the challenged venire member exhibited or acknowledged some race-neutral attitude or relationship that would justify the state's fearing his or her

---

[2] In Georgia v. McCollum, 505 U.S. 42 (1992), the Supreme Court extended Batson, making the defendant's peremptory challenges subject to equal protection scrutiny as well.

[3] In Powers v. Ohio, 449 U.S. 400 (1991), the Court deleted the requirement that the defendant and the excluded potential juror be of the same race.

antipathy to the prosecution, see State v. Ellison, 841 S.W.2d 824, 827 (Tenn. 1992); Brown, 915 S.W.2d at 9; Butler, 795 S.W.2d at 687.  Nevertheless, the exercise of "even one peremptory challenge in a purposefully discriminatory manner would violate equal protection." Ellison, 841 S.W.2d at 827.

This Court reviews the findings of a trial court relative to a Batson challenge under an abuse of discretion standard.  That is, we "cannot substitute our judgment for that of the trial court or declare error absent a finding that the trial judge abused his or her discretion."  State v. Matthew L. Moates, No. 03C01-9610-CR-00383, (Tenn. Crim. App. filed June 24, 1997, at Knoxville); State v. Jerry Blaylock, No. 02C01-9602-CC-00069 (Tenn. Crim. App. filed Aug. 21, 1997, at Jackson).

We find no abuse of discretion in the trial court's conclusion that the totality of relevant facts do not indicate purposeful discrimination.  Indeed, in accordance with the cited precedent, the state's challenge of the only African-American potential juror does not, standing alone, establish even a prima facie showing of purposeful discrimination. See Batson, 476 U.S at 96; Bell, 759 S.W.2d at 653.  Rather, the objecting party must also demonstrate that the relevant circumstances raise an inference that the potential juror was challenged because of his or her race. See Batson, 476 U.S at 96.  The record reflects no circumstances indicative of a race-based motive for the state's challenge.  We, therefore, respectfully disagree with the trial court's conclusion that the defendant established a prima facie case.  This aside, however, we find no abuse of discretion in the trial court's ultimate conclusions that the state's race-neutral explanation of its challenge is supported by the record and that the

totality of relevant facts do not indicate purposeful discrimination. This issue is without merit.

## SENTENCING--CROSS APPEAL

The state cross-appeals, challenging the severity of the imposed sentence. When an appellant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The appellant carries the burden of showing that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d) sentencing comm'n cmts; State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996).

The trial court sentenced the defendant as a Range III persistent offender to eleven years confinement. The sale of less than .5 grams of cocaine is a Class C felony, carrying a Range III sentence of ten to fifteen years. See Tenn. Code Ann. §§ 39-17-417(a), (c)(2); 40-35-112(c). The presumptive sentence for a Class C felony is the minimum sentence in the range, absent enhancement or mitigating factors. See Tenn. Code Ann. § 40-35-210(c). At the defendant's sentencing hearing, the trial court found applicable the following three enhancement factors:

> The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

-8-

> The felony was committed while on [probation] . . . from a prior felony conviction.

Tenn. Code Ann. § 40-35-114(1), (8), (13). The defense presented no mitigating factors, and the trial court found none applicable. Based on these findings, the court enhanced the defendant's sentence from the presumptive sentence of ten years to eleven years.

The state does not contest any of the trial court's findings except to challenge the weight that the trial court accorded the stated enhancements. Arguing that these factors warrant a sentence of at least mid-point in the range, the state notes that one of the purposes of the 1989 Sentencing Reform Act is to restrain defendants who have a lengthy history of criminal conduct and asserts that, in the present case, "a sentence near the minimum in the range is not entirely consistent with that purpose."

We initially observe that the record reflects ample consideration of all relevant sentencing principles. Therefore, the trial court's findings are accompanied by a presumption of correctness. Moreover, the weight to be accorded enhancement or mitigating factors is left to the sound discretion of the trial judge so long as it complies with the purposes and principles of sentencing and the court's findings are adequately supported by the record. See T.C.A. § 40-35-210, sentencing comm'n cmts; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986). Our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence, and made findings of fact adequately supported by the record. Thus, we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). This issue is without merit.

**CONCLUSION**

The judgment of the trial court is, in all respects, AFFIRMED.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
DAVID H. WELLES, Judge

_____
JOE G. RILEY, Judge