IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 29, 2002

## STATE OF TENNESSEE v. JAMEY LUTHER CHEEK

**Direct Appeal from the Criminal Court for Knox County**
**No. 70083     Mary Beth Leibowitz, Judge**

_____

**No. E2001-02977-CCA-R3-CD**
**March 11, 2003**
_____

The Defendant pled guilty to aggravated assault, leaving the manner of service of his sentence to the discretion of the trial court. Following a sentencing hearing, the trial court denied alternative sentencing. The Defendant now appeals the trial court's decision, arguing (1) that the trial court erred by excluding two documents as exhibits at the sentencing hearing, or, in the alternative, that he should have been granted a continuance on the day of the hearing; and (2) that the trial court erred by denying his application for probation. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

R. Scott Carpenter, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Jamey Luther Cheek.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Patricia Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. PROCEDURAL HISTORY

On February 23, 2000, the Defendant, James Luther Cheek, was charged by information with aggravated assault. The information alleged that the Defendant intentionally caused bodily injury to Christopher Hill by use of a deadly weapon. On that same date, the Defendant pled guilty in the Criminal Court for Knox County to aggravated assault, a Class C felony. See Tenn. Code Ann. § 39-13-102(d). Pursuant to a plea agreement, the Defendant received a three-year sentence, with the manner of service of the sentence left to the trial court's discretion. The trial court ordered a presentence investigation and report and scheduled a sentencing hearing for April 19, 2000.

However, the Defendant failed to report to his probation officer as required for the preparation of the presentence report, and he also failed to appear in court on the date scheduled for sentencing. As a result, the trial court issued a capias for his arrest.

The capias was served, and the Defendant was in custody when he appeared before the court on June 29, 2000. At that time, the trial court set bond and continued the case until August 3, 2000. The Defendant subsequently made bond and was released under the supervision of a probation officer pending a sentencing hearing scheduled for November 30, 2000. In November 2000, the Defendant pled guilty to unrelated offenses in Campbell County and received a nine-year sentence to be served in Campbell County's community corrections program.

On November 30, 2000, the Defendant again failed to appear for his sentencing hearing in Knox County. Accordingly, the trial court revoked the Defendant's bond and issued a second capias for his arrest. The Defendant was arrested pursuant to the capias on August 16, 2001. On September 6, 2001, the trial court granted the Defendant a continuance for an evaluation of his suitability for the Community Alternatives to Prison Program (CAPP), Knox County's community corrections program, and the trial court scheduled a sentencing hearing for October 4, 2001. On October 3, 2001, the Defendant filed a motion requesting that he be considered for community corrections pursuant to Tennessee Code Annotated § 40-36-106(c) due to his history of alcoholism. Because the community corrections program was unable to prepare a report by October 4, 2001, the trial court granted the Defendant another continuance and reset the sentencing hearing for October 12, 2001. For reasons not stated in the record, the matter was later continued until November 29, 2001.

On November 29, 2001, the Defendant's sentencing hearing took place. At the conclusion of the hearing, the trial court declined to grant the Defendant any form of alternative sentence. The Defendant now appeals the judgment of the trial court, arguing (1) that the trial court erred by excluding as exhibits at the sentencing hearing two documents, or, in the alternative, that he should have been granted a continuance on the date of the hearing; and (2) that the trial court erred by denying his application for probation. Having reviewed the record, we find no error by the trial court and thus affirm the Defendant's sentence.

## II. FACTS UNDERLYING CONVICTION

According to the Knox County Sheriff's Office Community Alternatives to Prison Program report, the Defendant made the following comments about the offense in this case:

> I was intoxicated, under the influence of Xanax, really drunk. I just remember having dinner at Chili's with friends. We went to Wal-Mart to get things for new apartment. My friends went in while I was fumbling with a CD. A man got out of his car and said something. I asked him what he said. He said I was drunk, to chill out. We started cussing each other out. Then we started exchanging blows. We fought for about a minute, as best I remember. I got up in my friends [sic] Blazer and got some brass knuckles and hit the guy with them. We continued to fight. Guys broke us up. I jumped in friend's Blazer and drove off. The police arrested me.

The report notes: "This version of the account is different and probably more accurate than the statement in the [presentence report]. In that report, [the Defendant] indicated the fight started over a comment made toward one of the girl's [sic] in his party and that the victim fell and hit his head."

## III. EVIDENCE PRESENTED AT THE SENTENCING HEARING

The following evidence was presented at the Defendant's sentencing hearing: Vivian McCarthy testified that she was a probation and parole manager for the Board of Probation and Parole. She stated that as part of her duties, she interviews potential probationers to determine their abilities to successfully complete enhanced probation. She stated that Laura Thompson, another employee of the Board of Probation and Parole, interviewed the Defendant and completed his presentence report. McCarthy testified that, according to the presentence report, the Defendant had a juvenile record, which included charges involving underage alcohol consumption, "alcohol-related problems, [and] a vehicle[-]related problem." She also stated that his juvenile record included a theft charge and a vandalism charge. McCarthy further testified that in Campbell County, the Defendant pled guilty to theft in an amount over $1,000; to two counts of contributing to the delinquency of a minor; to aggravated burglary; and to theft.[1] In addition, she stated that Thompson found that the Defendant was not diligent with regard to appearing in court and that he failed to return one of her calls.

McCarthy summarized Thompson's assessment of the Defendant's ability to successfully complete probation as follows:

[H]e's an extremely high risk. He does have prior misdemeanors and a juvenile record. He also has an active capias attachment and a violation of probation pending in Campbell County of those charges that we just discussed. He was court ordered to Peninsula [Hospital] as a juvenile for an evaluation but left the facility prior to the evaluation. He failed to report to this office for the presentence investigation and report, as ordered by the Court on February the 23rd, 2000, and failed to report to court for his sentence hearing on 4-19-00. He denies any current use of illegal drugs. He also denies any problems with alcohol; however, his prior criminal record – history involves several charges and/or convictions for alcohol-related offenses. And he stated he was drunk when he committed the current offense.

On cross-examination, McCarthy stated that although she had spoken with the Defendant while he was in custody, most of the information that she had presented on direct examination was based on an investigation which included Thompson's interview of the Defendant, police records, and court records. She recalled that when she spoke with the Defendant, he told her that he was

---

[1] The Defendant's Knox County Community Alternatives to Prison Program assessment indicates that the Defendant pled guilty in Campbell County to one count of theft in an amount over $1,000 and to one count of theft in an amount under $1,000. It also indicates that the Defendant pled guilt in Campbell County to "[f]elony [f]ailure to [a]ppear" and to "[u]nderage [d]rinking."

"trying to work on his alcohol problem." When asked about her impression of the Defendant, McCarthy stated,

> I try to give everybody a chance. I know this is a very, very long sentence. I do know that it would be almost impossible if he were to try to be on our probation program as well as Campbell County's Community Alternatives to Prison Program. There's no way he could successfully complete that.

McCarthy also acknowledged portions of the presentence report which concerned the Defendant's family history. She stated that the Defendant's parents divorced when he was three years old and that he did not have contact with his father until he was eighteen years old. She also reported that the Defendant's father is an owner of Tennessee Tube Bending and that his mother was employed as a respiratory therapist for twenty-one years until she became addicted to painkillers and lost her job, family, and home. McCarthy stated that the Defendant had not had contact with his mother since 1998 and that his maternal grandmother was his primary caretaker when he was a child. However, she reported that the Defendant's grandmother died when the Defendant was a freshman in high school.

On redirect examination, McCarthy testified that the Defendant was involved in Campbell County's community corrections program at the time of the hearing. She explained that Campbell County's program was equivalent to Knox County's CAPP. She stated, however, that the Defendant was in "violation status" at the time of the hearing.

Tony Peterson, an employee of the Community Alternatives to Prison Program, testified that he evaluated the Defendant to determine whether he was an appropriate candidate for CAPP. He acknowledged that the Defendant was involved in Campbell County's community corrections program at the time of the hearing, having received a nine-year sentence in that county for two charges of theft, aggravated burglary, failure to appear, contributing to the delinquency of a minor, and underage drinking. He stated that the Defendant was on violation status with the community corrections program.

Peterson testified that he had concluded that the Defendant was not an appropriate candidate for CAPP. He explained that he reached this conclusion because the Defendant "didn't respond very well to the Community Corrections in Campbell County" and because he was considered a risk due to the violent nature of the crime in this case. Peterson explained that violent offenders are ineligible for CAPP. He stated that the eligibility criteria of Tennessee Code Annotated § 40-36-101 require that a candidate be a non-violent offender convicted of property-related, alcohol-related, or drug-related offenses.

On cross-examination, Peterson testified that he was aware of the "special needs" provision of the statute governing CAPP. He explained that this provision allowed for placement on CAPP of offenders with substance abuse problems or mental health issues. He testified that he was aware that the Defendant reported a chronic history of alcohol abuse or mental health problems, but he stated that his office did not investigate whether these problems related to the criminal conduct in

this case. Peterson testified that he did not interview the Defendant himself. Peterson reported that a "level of service inventory," which provides "a quantifiable individual assessment of the likelihood of an offender reoffending without treatment," was administered to the Defendant. According to the inventory, the Defendant was assessed as a "[m]oderate risk" with a 31.1 percent chance of reoffending without treatment. Peterson stated that the level of risk could decrease if treatment were made available to the Defendant. Peterson acknowledged that substance abuse treatments and counseling sessions were available through CAPP, and he stated that he had noted some success among participants in CAPP who took advantage of such programs.

Marilyn McCollum testified on behalf of the Defendant. She stated that she was acquainted with the Defendant because he had developed a romantic relationship with her daughter during the spring prior to the hearing. McCollum reported that she had submitted a letter to the court concerning the Defendant.

McCollum testified that at the time she met the Defendant, she was not aware that a capias for his arrest had been issued. However, she reported that she was aware that the Defendant had made efforts to enroll in a substance abuse treatment program at the Salvation Army Rescue Mission. She stated that she knew that the Defendant "stayed there awhile," but she did not know whether he actually took part in a treatment program while there. She also testified, "As far as I know he did not complete [the programs at the mission] . . . ."

McCollum testified that she arranged for the Defendant to attend counseling sessions with a psychologist that her daughter was already seeing. She recalled that the Defendant attended "maybe three sessions" with her daughter before his arrest. McCollum further testified that the Defendant attended Alcoholics Anonymous (AA) meetings during the time that she knew him and that he also attended church with her family. In addition, she stated that she "was told" that the Defendant signed up for anger management classes.

> When asked what sentence the court should impose, McCollum replied,
> That's a very difficult question. I want the Court to do what is in [the Defendant's] best interest. . . . I feel like if he got the help that he needs with alcohol problems which – of course, being in prison has kept him from being able to drink. But I feel like if he were on the outside and in a program and was in a supervised situation that he would be able to make the changes that he needs to in his life, because I saw him doing that two or three weeks prior to his arrest. I felt like I saw that with my own eyes, that he was definitely making a change. He made a huge change in my daughter's life, and I would like to see him have another chance.

On cross-examination, McCollum testified that the Defendant checked into the rescue mission because of his alcoholism, but left at the urging of her daughter. She explained that the Defendant and her daughter had been living together before he moved to the rescue mission, and her daughter missed him and wanted him to find help on an out-patient basis at another facility. McCollum testified that the Defendant therefore voluntarily left the rescue mission. McCollum

explained that the Defendant attended AA meetings as a requirement of the rescue mission program. She also testified that she had served as a job reference for the Defendant. She reported that the Defendant had obtained employment at Goodwill Industries, but was arrested on the day after he got the job. Finally, McCollum testified that the Defendant owed her and her husband approximately $2,500 because he had twice wrecked her daughter's car and because he owed them some money for prescription medications.

## IV. ANALYSIS

### A. ADMISSION OF EVIDENCE

The Defendant first argues that the trial court erred by refusing to allow into evidence at his sentencing hearing two documents: a discharge summary from Peninsula Hospital and a letter from Reverend Robert C. Burch, the minister at Calvary Baptist Church in Knoxville. In his brief, the Defendant states that he attempted to introduce the Peninsula Hospital discharge summary to rebut testimony by Vivian McCarthy concerning the reason he was discharged from the hospital. He states that he attempted to introduce the letter from Reverend Burch to show that prior to his arrest the Defendant was attending church and having a positive effect on his girlfriend, who was a lifelong member of the church. In the alternative, he argues that even if it was not error for the trial court to exclude the documents, the trial court erred by denying his motion for a continuance made on the day of the sentencing hearing. He contends that a continuance would have granted him the "opportunity to present important rebuttal and character proof at his sentencing hearing."

Generally, the admissibility of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling with regard to the admissibility of evidence will not be reversed on appeal absent an abuse of discretion. State v. James, 81 S.W.3d 751, 760 (Tenn. 2002). "An abuse of discretion exists when the reviewing court is firmly convinced that the lower court has made a mistake in that it affirmatively appears that the lower court's decision has no basis in law or in fact and is therefore arbitrary, illogical, or unconscionable." State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186, 191 (Tenn. 2000).

A trial court has the statutory authority to admit trustworthy and probative evidence, including hearsay, for sentencing purposes. State v. Moss, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999); see Tenn. Code Ann. § 40-35-209(b). Reliable hearsay is admissible in a sentencing hearing as long as the opposing party has a fair opportunity to rebut the evidence. Id. The hearsay evidence must also carry an indicia of reliability to satisfy due process. State v. Taylor, 744 S.W.2d 919, 921 (Tenn. Crim. App. 1987).

The record indicates that when the Defendant attempted to introduce the two documents at issue into evidence, the State commented that it had received the documents on the prior afternoon "at the very close of business." The State told the trial court that because of this, it had been unable to fully review and verify the contents of the documents, despite attempts to contact Reverend Burch on the evening prior to the hearing. The court responded that it would grant the State the opportunity

to review the documents and the parties the opportunity to call witnesses with regard to documents, but cautioned that in order to do so, it would have to reset the sentencing hearing. After further discussion, counsel for the defense requested a continuance to "establish the necessary authentification for Mr. B[u]rch's letter and for the Peninsula Hospital discharge." The trial court then denied the motion for a continuance.

The State now argues that the trial court actually did consider the two documents at issue in sentencing the Defendant. Although the record is unclear, it appears that the trial court considered only the sentencing memorandum to which the two documents were attached, but not the documents themselves. It appears that the trial court considered only the sentencing memorandum, which was signed and filed by defense counsel, as part of the technical record. If, as the State argues, the trial court did consider the two documents, the Defendant cannot now be heard to complain. Nonetheless, assuming that the trial court did not consider the documents, as the Defendant argues, we conclude that the court's decision not to admit the two documents into evidence was not error. Because, due to the late filing of the documents, the State was not granted a fair opportunity to rebut the documents, the trial court did not abuse its discretion in refusing to admit the documents into evidence. See Tenn. Code Ann. § 40-35-209(b).

In the alternative, the Defendant argues that the trial court erred by refusing to grant him a continuance to procure witnesses to present rebuttal and character proof at his sentencing hearing. "The granting or denial of a continuance is a matter left to the sole discretion of the trial court, whose decision will not be disturbed absent 'a clear showing of gross abuse of this discretion to the prejudice of the defendant.'" State v. Goodwin, 909 S.W.2d 35, 44 (Tenn. Crim. App. 1995) (quoting Baxter v. State, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973)). This Court has previously stated that "[t]he only test is whether the defendant has been deprived of his rights and an injustice done." State v. Goodman, 643 S.W.2d 375, 378 (Tenn. Crim. App. 1982). To reverse the judgment of the trial judge, we must be convinced that "the complaining party did not have a fair trial *and* [that] a different result would or might reasonably have been reached had there been a different disposition of" the application for a continuance. Id. (emphasis in original); see also State v. Butler, 795 S.W.2d 680, 684 (Tenn. Crim. App. 1990).

The trial court did not state its reasons for denying a continuance on the day of the hearing. However, in light of the extended time period between the Defendant's plea and his sentencing hearing, caused primarily, if not exclusively, by the Defendant's failure to cooperate with court orders and his failure to appear in court on more than one occasion, we conclude that the trial court did not abuse its discretion by refusing to grant a continuance at the sentencing hearing. Furthermore, we are unconvinced that the trial court would have ultimately imposed a different sentence had it granted the Defendant's application for a continuance. We therefore conclude that this issue is without merit.

## B. ALTERNATIVE SENTENCING

The Defendant next challenges on appeal the trial court's order that he serve his sentence in the Tennessee Department of Correction. He contends that the State failed to rebut the presumption that he was a favorable candidate for alternative sentencing and argues that he should have been granted probation.

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the

factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

Specifically, the Defendant argues that he should have been granted some form of alternative sentencing. Tennessee Code Annotated § 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration . . . .

A defendant who does not fall within this class of offenders "and who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption, "[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative sentencing and that a sentence other than incarceration would result in successful rehabilitation." State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); see also Tenn. Code Ann. § 40-35-303(a). The Defendant, as a standard offender convicted of a Class C felony, see Tenn. Code Ann. § 39-13-102(d), is presumed to be a favorable candidate for alternative sentencing.

However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing Moss, 727 S.W.2d at 235). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated § 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated § 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5); see also State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

The Defendant more specifically argues that he should have been granted probation. In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169.

In sentencing the Defendant, the trial court acknowledged the Defendant's difficult family history and history of addictions, stating

It is obvious to the Court that [the Defendant] from his youth has had a lot of problems, and those problems have resulted in an alcohol and substance abuse problem. [The Defendant] has had problems with violence. [The Defendant] has basically treated himself for those problems.

. . . .

[The Defendant has] had a lot of problems that . . . did not start out [his] fault, but [he] is an adult now. [He has] depression problems. [He has] substance abuse problems. [He is] a danger to [himself] when [he is] out there just doing whatever [he] want[s] to do because [he is] treating [himself] with drugs and with alcohol. [The Defendant] is not taking responsibility.

. . . .

It is . . . hard to deal with an addiction problem, but you have to mean what you say. Truthfulness has to have a lot to do with it.

The trial court also noted the Defendant's poor history of compliance with court orders:

[The Defendant] was arrested in this case, I guess, fairly shortly before an Information was taken and came into the court to enter a guilty plea by Information, and that date was February 23rd, 2000. It was set for probation. He did not get a [presentence] report done. He never showed back up to court, and a capias . . . was taken on him on April the 19th when he should have been in court for probation.

He had charges which predated this but which were sentenced after this so he was already in trouble at that point with this county and Campbell County.

[The Defendant] was taken into custody in June of 2000. A bond was set which he somehow was – actually, we reduced it and required him to be continually supervised by enhanced probation, pending further disposition.

He made a small bond in September of 2000, and the very next court date [the Defendant] did not show back up. The bonding company had to ask for warrants and an extension of time to collect [the Defendant]. He was finally taken into custody in August, and he has been in custody since, pending the opportunity to get all this information before the Court.

The trial court also pointed out that the Defendant did not comply with the requests of his probation officer in Knox County or with the terms of his probation in Campbell County.

In addition, the trial court commented about the Defendant's lack of effort to help himself while criminal charges were pending against him:

> [The Defendant] really did nothing to help himself except that when he finally got into the relationship with Ms. McCollum's daughter, Dr. and Mrs. McCollum tried to help him. They assisted him with some treatment. They assisted him with some help. But he was not real honest with them . . . .
>
>         . . . .
>
> [The Defendant] went to the Mission and the Mission says – and I quote . . . . – I am not sure what page this is of the CAPP report, but it is in the CAPP report. "While [the Defendant] is a very likeable young fellow, he has burned his bridges at the Mission and they will not accept him back at this time. Likewise at Salvation Army Boot Straps, they report similar behavior. [The Defendant] would come in, say he was going to do it, and would leave before he ever did anything and left unpaid bills."
>
> [The Defendant] did the same thing in Campbell County. [He] got into trouble and then . . . just wanted to do what [he] wanted to do, and it is a good life until [he] get[s] caught. . . .
>
>         . . . .
>
> [The Defendant] actually caused damage to [the McCollums'] property for which [he] owe[s] them money.
>
> [He has] done a lot of things where . . . if [he] meant to change [his] ways, [he] did not really get serious about it until [he] realized within two weeks of being arrested that [he was] about to get back into a striped suit.

The court further noted that although many had tried to help the Defendant, the Defendant did not take advantage of the help he was offered. The court attributed the Defendant's two-week attendance of AA meetings to Mrs. McCollum's efforts. The court also found that the Defendant was untruthful:

> [The Defendant] . . . has not been truthful with the Court. [He] has failed to do any number things over and over. He was not truthful with the people that tried to help him, not at the Mission, not at the Salvation Army, not at the probation office, not with the McCollums, not anybody.

The court then pointed out the nature of the offense in this case and acknowledged the offenses he committed in Campbell County:

> I also have to recognize that [the Defendant] is here because he committed an aggravated assault. . . . Ths first version he finally told [Laura Thompson] had to do with somebody hitting themselves in the head on a sidewalk because he knocked them down. The second version that he told CAPP had to do with some brass knuckles that he went and got out of his truck . . . and hit somebody with.
>
> [The Defendant] is here because he caused a violent offense against somebody. He was convicted of a major felony theft offense and other offenses in Campbell County.

The court concluded,

> I am encouraged that [the Defendant] has changed some of his ways, and I am very sorry that . . . he sought to do that so late.
>
> . . . .
>
> [The Defendant] needs to understand that . . . I recognize that he has been between rocks and hard places all his life, and he just came up against a rock . . . he cannot wiggle around. Unfortunately, [the Defendant] needs to follow through with this. And once he has completed it, then he will have completed something in his life for which he is responsible and can go on with his life.

Following these comments, the court found the Defendant ineligible for CAPP based on his "actions toward [the] [c]ourt" and based on his prior record. The court thus denied the Defendant probation and ordered that the Defendant serve his sentence in the penitentiary.

Although the trial court did not state specific findings regarding the factors enumerated in Tennessee Code Annotated § 40-35-103(1), we conclude, based upon the findings of fact made by the trial court, that at least one of the factors applies in this case. Tennessee Code Annotated § 40-35-103(1)(C) states that the statutory presumption of an alternative sentence may be overcome if "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Obviously, the Defendant has a history of noncompliance with court orders and with the terms of probation. In fact, testimony at the sentencing hearing revealed that the Defendant was on "violation status" with a Campbell County community corrections sentence at the time of the sentencing hearing in this case. Furthermore, it is clear from the trial court's comments that the court considered the Defendant's potential for rehabilitation to be poor without the service of some time in the penitentiary. Finally, the court indicated in its comments at the conclusion of the sentencing hearing that it did not believe that probation would be in the best interest of the Defendant. For these reasons, we conclude that the trial court did not err by denying probation and ordering the Defendant to serve his entire sentence in the penitentiary.

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE