IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2008

**STATE OF TENNESSEE v. MICHAEL DEWAYNE MANN**

**Appeal from the Circuit Court for Dyer County**
**No. C06-57   Lee Moore, Judge**

_____

**No. W2007-00984-CCA-R3-CD  - Filed June 17, 2008**

_____

Appellant, Michael Dewayne Mann, was found guilty by a Dyer County Jury of driving under the influence and for violation of the implied consent law.  In a bifurcated hearing, the trial court found Appellant guilty of third offense driving under the influence.  As a result, Appellant received a sentence of eleven months and twenty-nine days, which was to be suspended after the service of 150 days of incarceration.  The trial court denied a motion for new trial.  On appeal, the following issues are raised for our review: (1) whether the evidence is sufficient to support the convictions; and (2) whether the trial court improperly allowed a police officer and the prosecutor to refer to Appellant's prior record.  We determine that the evidence was sufficient to support the conviction.  Furthermore, we decline to address the evidentiary issues as plain error.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID H. WELLES, J., joined.

James E. Lanier, District Public Defender and Patrick McGill, Assistant District Public Defender, for the appellant, Michael Dewayne Mann.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General, and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 13, 2006, the Dyer County Grand Jury indicted Appellant for driving under the influence third offense and for a violation of the implied consent law.  According to Officer Sterling Wright of the Dyersburg Police Department, Appellant was driving a vehicle that was coming off of Central Street onto McLean in the early morning hours of February 20, 2005.  Officer Sterling

heard tires squealing and saw Appellant's vehicle "skidding sideways" as it made the turn. The vehicle accelerated past Officer Wright and "shot" by him. Officer Wright briefly lost visual contact with the vehicle but eventually saw Appellant exiting the vehicle at 1010 Fair Street in Dyersburg. Appellant left the vehicle and ran toward the house at that address. Officer Wright knew Appellant when he saw him, so he stepped out of his patrol car and said, "Hey, Mike, come here."

Appellant approached Officer Wright and spoke with him. The officer could smell "alcohol coming from his breath when he talked to [Appellant]." Officer Wright also stated that Appellant's speech was "slurred." At that point, Officer Wright asked Appellant to complete some field sobriety tests. Appellant agreed.

Officer Wright described the one-legged stand test to Appellant. This is a standardized test that requires the suspect to raise one foot off the ground about six inches with the toe pointing outward. The suspect is instructed to stare at his or her toe and asked to count aloud, "1,001, 1,002, 1,003, etc" while the officer times the suspect. Officer Wright demonstrated the proper performance of the one-legged stand test to Appellant. Appellant indicated that he understood the instructions and informed Officer Wright that he did not have any medical problems that would prevent him from being able to perform the test.

Officer Wright reviewed his notes prior to continuing his testimony. According to his testimony, Appellant did not count like he was instructed. Appellant would count out, "1, 2, 3" and then start jumping around, skipping ahead in numbers and going back and then starting all over again. Appellant was not able to get through to the count of thirty. Officer Wright concluded that based on his training and expertise, Appellant was intoxicated.

Officer Wright also asked Appellant to perform the nine-step walk-and-turn. Again, Officer Wright explained the test to Appellant and asked him to refrain from starting the test until the explanation was completed. Appellant did not follow directions. Instead, Appellant started attempting the nine-step walk-and-turn. Appellant was "falling around, mimicking what [Officer Wright] was doing." Officer Wright told Appellant to "[w]ait until [he] told [him] to do it." Officer Wright told Appellant to complete the test with his arms down to his sides, but Appellant could not complete the test without holding out his arms to regain his balance.

When Officer Wright saw that Appellant could not properly perform the field sobriety tests, he concluded that Appellant was driving under the influence and placed him under arrest. Appellant was taken to the police station where he refused to submit to a breath alcohol test. Appellant was presented with the implied consent form. Appellant signed his name on the wrong line on the form. Officer Wright described Appellant's behavior at the police station. He stated that Appellant was very upset and "was crying that he was in jail again."[1]

---

[1] At this point, counsel for Appellant objected, and the trial court sustained the objection. During a jury out hearing, the trial court explained that it would give a curative instruction regarding Officer Wright's testimony about
(continued...)

Sergeant Jason Alexander, also an employee of the Dyersburg Police Department, was on duty and assisted Officer Wright in booking Appellant. Sergeant Alexander also noticed that Appellant had the odor of alcohol about his person, that he was unsteady on his feet, and that his speech was slurred. Sergeant Alexander stated that Appellant signed the implied consent form before he could be told where to sign. Appellant signed in the space titled "requesting officer" rather than the box designated "arrestee."

Appellant's father, Eddie Joe Mann, testified that Appellant was in special education classes while in school because of problems with "writing, arithmetic, and counting." Mr. Mann informed the trial court that Appellant graduated from high school with an "attendance degree." Mr. Mann admitted that Appellant had no physical disabilities and that Appellant was employed at the time of trial. According to Mr. Mann, Appellant could read and write.

Appellant took the stand in his own behalf. He claimed that earlier on the day of his arrest he was visiting with family in Missouri. Appellant rode to Missouri with his uncle at around 6:00 p.m. on the evening of February 19, 2005. Appellant returned to Dyersburg at around 11:00 p.m. or 12:00 a.m. that night. While Appellant was in Missouri, he drank three beers. Apparently, Appellant got into an argument with some of his family members. At this point, Appellant decided to walk home. Appellant called his father on his way home and asked him for a ride. Mr. Mann met Appellant somewhere in Missouri and drove him back to Dyersburg.

Appellant testified that he was out later that night or early the next morning driving to a friend's house. The friend was not at home, so Appellant did not stop. Instead, Appellant "came right back home." Appellant acknowledged that he squealed his tires while he was negotiating a turn in his vehicle. Appellant knew that he passed Officer Wright but continued on to his house. When Officer Wright approached Appellant, Appellant had already gotten out of his vehicle and was up on the porch of the residence.

Appellant assessed his own performance on the field sobriety tests. According to Appellant, he did not think that he "did very good on [the one-leg stand]" because he has "sort of like a nervous problem" because he is "always moving and jumping around." On the other hand, Appellant thought that he did "great" on the nine-step walk-and-turn.

Appellant admitted that he attended high school, but claimed that he did not have a diploma because he had "issues" with reading, writing, and arithmetic. Appellant informed the trial court that he could read and write. Again, Appellant admitted that he drank three twelve-ounce beers before driving on the public roads in Dyersburg.

At the conclusion of the proof, the jury found Appellant guilty of driving under the influence and violation of the implied consent law. In a bifurcated hearing, the State presented proof

---

[1](...continued)

the reference to Appellant being in jail "again," but counsel for Appellant refused the instruction.

of two prior convictions for DUI. Appellant waived his right to have the jury make the determination as to whether it was Appellant's third offense. The trial court found Appellant guilty of third offense DUI. The trial court set a sentencing hearing for a later date. At the conclusion of the sentencing hearing, the trial court sentenced Appellant to eleven months and twenty-nine days, which was to be suspended after the service of 150 days in incarceration.

Appellant filed a timely motion for new trial. It was denied by the trial court. This appeal followed.

*Analysis*

On appeal, Appellant first challenges the sufficiency of the evidence with respect to his conviction for third offense driving under the influence. Specifically, Appellant argues that "no objective trier of fact could have convicted him" because both officers had to "use their reports to 'refresh' their memories" so the only "reliable evidence adduced at trial was the defendant's testimony." The State contends that the evidence was sufficient to support the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Tennessee Code Annotated section 55-10-401 provides:

(a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping

center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more.

Viewing the evidence in a light most favorable to the State, we conclude that the evidence was sufficient to support the conviction for third offense driving under the influence. Officer Wright saw Appellant driving after he heard tires squealing. Appellant's vehicle was "skidding sideways." When Officer Wright approached Appellant, he smelled of alcohol and was slurring his speech. Appellant admitted that he drank three twelve-ounce beers earlier that evening. Further, Appellant could not follow directions and was unable to satisfactorily complete the field sobriety tests. Sergeant Alexander also noted the odor of alcohol about Appellant's person and testified that Appellant was unsteady on his feet and was slurring his words. The jury obviously accredited the testimony of the officers. Again, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *Odom*, 928 S.W.2d at 23. This issue is without merit.

*References to Appellant's Past*

Appellant next argues that his case was prejudiced when Officer Wright was allowed to testify that Appellant was "very upset and he was crying that he was in jail again." Appellant contends that this statement, coupled with the statement by counsel for the State during opening statements indicating that Officer Wright knew Appellant and "call[ed] him by name" were both inadmissible evidence of other crimes, wrongs, or acts of Appellant. Appellant admits that he objected to the statement of Officer Wright but refused a curative instruction by the trial court because it "may be worse than what's already come out." On appeal, the State argues that Appellant failed to preserve this issue by neglecting to object to the opening statement and failing to request a curative instruction. Further, the State argues that the matter does not rise to the level of plain error.

This Court has no obligation to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). The failure to object, request a curative instruction or move for a mistrial is typically grounds for waiver of an issue on appeal. *State v. Walker*, 910 S.W.2d 381, 386 (Tenn. 1995).

As he admits, Appellant did not object to the statement made by counsel during opening that he now complains about on appeal. Typically when a prosecutor's statement was not the subject of a contemporaneous objection, the issue is waived. Tenn. R. Crim. P. 33 and 36(a); *see also State v. Thornton*, 10 S.W.3d 229, 234 (Tenn. Crim. App. 1999); *State v. Green*, 947 S.W.2d 186, 188 (Tenn. Crim. App.1997); *State v. Little,* 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). Thus, if this

Court is to review the claims of prosecutorial misconduct we must do so through the process of "plain error" review embodied in Tenn. R. Crim. P. 52(b). This Court has, in its discretion, from time to time reviewed allegations of prosecutorial misconduct, as "plain error" even in the absence of a contemporaneous objection. *See, e.g., State v. Marshall*, 870 S.W.2d 532 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Carter*, 988 S.W.2d 145 (Tenn. 1999) (determining in absence of objection that prosecutor's jury argument was not plain error); *State v. Butler*, 795 S.W.2d 680 (Tenn. Crim. App. 1990) (considering whether statements of prosecutor were plain error despite lack of objection by defendant); *Anglin v. State*, 553 S.W.2d 616 (Tenn. Crim. App. 1977) (determining that in order to justify reversal on the basis of improper argument and remarks of counsel in absence of objection, it must affirmatively appear that the improper conduct affected the verdict to the prejudice of the defendant). However, appellate courts are advised to use it sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default. *Id.*; *see State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007).

In exercising our discretion as to whether plain error review under Tenn. R. Crim. P. 52(b) is appropriate, the Tennessee Supreme Court has directed that we examine five factors: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (citing *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). All five (5) factors must be present for plain error review. *Smith*, 24 S.W.3d at 283.

For a "substantial right" of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings. *United States v. Olano*, 507 U.S. 725, 732-37 (1993) (analyzing the substantially similar Fed. R. Crim. P. 52(b)); *Adkisson*, 899 S.W.2d at 642. This is the same type of inquiry as the harmless error analysis under Tenn. R. App. P. 36(b), but the appellant bears the burden of persuasion with respect to plain error claims. *See Olano*, 507 U.S. at 732-37.

We decline to view these issues as plain error. Appellant did not object to the prosecutor's statement. Because of the overwhelming evidence of Appellant's guilt, we conclude that the prosecutor's statements did not affect the outcome of the trial, so there also has not been a substantial right of the accused that has been adversely affected. Moreover, the trial court offered to give a curative instruction after Officer Wright's comment that Appellant was crying because he was in jail "again." Counsel for Appellant refused a curative instruction, explicitly stating that it was for tactical reasons. Accordingly, review of these issues as plain error is not necessary to do substantial justice.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE