IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 19, 2016 Session

**ADAM C. BRASEEL v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Grundy County**
**No. 4221      Justin C. Angel, Judge**

_____

**No. M2016-00057-CCA-R3-PC – Filed October 7, 2016**

_____


Petitioner, Adam Clyde Braseel, was convicted of first degree premeditated murder, felony murder, especially aggravated robbery, attempted first degree murder, aggravated assault, and assault and sentenced to an effective sentence of life imprisonment with the possibility of parole. *State v. Adam Clyde Braseel*, No. M2009-00839-CCA-R3-CD, 2010 WL 3609247, at *1 (Tenn. Crim. App. Sept. 17, 2010), *perm. app. denied* (Tenn. Feb. 17, 2011). On direct appeal, this Court merged the aggravated assault and attempted first degree murder convictions and corrected several clerical errors in the judgments. In all other respects, the convictions and sentences were affirmed. Petitioner subsequently sought post-conviction relief on the basis of ineffective assistance of counsel, arguing, among other things that trial counsel should have filed a motion to suppress the pre-trial identification of Petitioner as the perpetrator, should have challenged the eyewitness identification of Petitioner at trial, and should have requested a jury instruction on eyewitness identification. After a hearing, the post-conviction court granted relief. The State appealed. After a thorough review, we reverse and remand the judgment of the post-conviction court. All of Petitioner's covictions are reinstated and his petition for post-conviction relief is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Mike Taylor, District Attorney General; and Steve Strain and David Shinn, Assistant District Attorneys General, for the appellant, State of Tennessee.

Douglas A. Trant, Knoxville, Tennessee, for the appellee, Adam C. Braseel.

# OPINION

Petitioner was indicted in March of 2006 for first degree murder, felony murder, especially aggravated robbery, attempt to commit first degree murder, aggravated assault, especially aggravated burglary, and assault. The State's proof at trial consisted primarily of the testimony of the victim's sister, Rebecca Hill, and nephew, Kirk Braden. Ms. Hill and Mr. Braden were staying with the victim, Malcolm Burrows, at his home in Tracy City while they were in between residences.

On the night of the victim's death, a person identified by both Ms. Hill and Mr. Braden as Petitioner, knocked on the door and asked the victim for help with his vehicle. The victim left with Petitioner in Ms. Hill's vehicle. Not long thereafter, Petitioner returned to the house alone and asked for starter fluid. When Ms. Hill reached under the sink to get the starter fluid, Petitioner began hitting her with a long object. Mr. Braden came to her assistance after she yelled for help. Petitioner threw a fire extinguisher at him. The victim's body was found in the woods a short distance from Ms. Hill's vehicle. His wallet was missing.

Ms. Hill identified Petitioner from a photographic lineup when she regained consciousness four or five days later. Mr. Braden was able to describe Petitioner's vehicle and made an unsolicited identification of Petitioner from a set of photographs. At least one of the victim's neighbors gave a description of the vehicle that was consistent with Mr. Braden's description. Petitioner's mother confirmed that she owned a vehicle matching the description of the vehicle seen at the victim's house. There was no physical evidence linking Petitioner to the crimes. Petitioner relied on an alibi defense at trial through several witnesses and his own testimony claiming that he was with a group of people four-wheeling in a nearby town, Coalmont, on the night of the victim's death. *Id.* at *1-7.

At the conclusion of the jury trial, Petitioner was convicted of first degree premeditated murder, first degree felony murder, especially aggravated robbery, attempt to commit first degree murder, aggravated assault, and assault. The trial court merged the convictions for first degree premeditated murder and first degree felony murder and sentenced him to life imprisonment for his murder conviction. The trial court ordered all of the other sentences to run concurrently for an effective sentence of life with the possibility of parole. *Id.* at *1.

On direct appeal, Petitioner challenged the sufficiency of the evidence for murder, especially aggravated robbery and aggravated assault. He also complained that the pre-trial identification processes were unduly suggestive. *Id.* This Court determined

Petitioner waived the issue with regard to impermissibly suggestive pre-trial identification because no motion to suppress was filed pre-trial and no objection was lodged during trial to challenge the identifications. *Id.* at *7. This Court found the evidence sufficient to support the murder convictions but remanded the matter for correction of the judgments to properly reflect the merger of the conviction of first degree felony murder into the conviction of first degree premeditated murder for a single judgment of conviction. *Id.* at *8. Lastly, this Court found, "as plain error that principles of double jeopardy bar . . . multiple convictions [for the aggravated assault and attempted first degree premeditated murder of Ms. Hill]." *Id.* at *12. The supreme court denied permission to appeal.

Petitioner filed a timely petition for post-conviction relief on February 14, 2012. In the petition, he alleged that he received ineffective assistance of counsel, that his convictions were based on an unconstitutional failure of the prosecution to disclose evidence favorable to the defense, that his convictions were based on an unconstitutionally selected and impaneled grand jury, and that the trial court erred in admitting illegal evidence. Specifically, with regard to ineffective assistance of counsel, Petitioner questioned trial counsels' failure to object to or contest the eyewitness identifications, call certain alibi witnesses, and the failure of trial counsel to request a jury instruction regarding the reliability of eyewitness identification. Petitioner also argued that trial counsels' cumulative failure to object to evidence at trial was ineffective assistance of counsel and that the State utilized an impermissibly suggestive photographic lineup for identification.

An amended petition was filed adding allegations of due process violations based on the disappearance of a Sun Drop bottle recovered from the scene containing a fingerprint that did not match Petitioner's fingerprint and the disappearance of the photographic lineup.[1] Petitioner also submitted the findings of an independent investigator along with a list of potential witnesses as part of an amended petition for relief.

The post-conviction court held a hearing on the petition at which the entire trial transcript was entered into evidence. At the hearing, Petitioner called several witnesses to testify on his behalf, all of whom testified regarding Petitioner's whereabouts on the night of the incident. Only one of those witnesses, Charles Partin, testified at trial. Neither trial counsel nor Petitioner testified at the hearing. Petitioner was represented by

---

[1] The orginal photographic line up has not disappeared. When we requested and received the archive record from Petitioner's direct appeal, trial Exhibit 25, the photographic lineup, was included. It was filed on May 29, 2009 with other trial exhibits and has remained with the clerk since that time. It is apparent that post-conviction counsel did not request the return of the trial exhibits to the post-conviction court before the evidentiary hearing. We have reviewed this archived exhibit and find that it and the photo line up attached to Petitioner's appeal brief are identical.

two attorneys at trial. Additionally, at the time of the post-conviction hearing, Ms. Hill was deceased.

Charles Partin, one of Petitioner's friends, testified at the hearing on the petition for post-conviction relief. Mr. Partin claimed that Petitioner spent January 7, 2006, the day of the victim's death, "pretty much all day" at his house. Petitioner left that night "between 9:00 and 9:15" when Mr. Partin "and a buddy" left to go to Manchester. Danny Johnson and Robin Crabtree were also at his house that day. Mr. Partin admitted that he testified at the trial and that he only "vaguely" remembered what occurred on the day of the victim's death. Mr. Partin could not recall what type of car Petitioner drove but recalled that it was a "dark" car with four doors.

None of the remaining witnesses presented by Petitioner at the hearing on the petition for post-conviction relief testified at the trial of the matter. Robin Smith met Petitioner for the first time at Mr. Partin's house on the day that the victim was killed. She recalled that Petitioner was at Mr. Partin's house at around 8:00 p.m. Ms. Smith left at around 9:00 p.m. with her daughter.

Danny Johnson also remembered meeting Petitioner at Mr. Partin's house on the same night at Mr. Partin's house at around 8:30 p.m. Mr. Johnson testified that he left around 9:00 p.m. with Mr. Partin and Ms. Smith to go to Manchester to an establishment called "Billiards."

James Nick Brown knew Petitioner and saw him on the day the victim was killed at Mr. Partin's house with Mr. Partin, BJ Partin and Hope Nunley. Petitioner was at the house from around noon to 9:15 p.m. that night when they went to Josh Seagroves's house. When they left the Seagrove residence, they went "four-wheel drive riding." Mr. Brown was with Petitioner "until the next day about 3 or 4 o'clock."

Darren Nunley, also known as "Boog," also testified that he saw Petitioner at the house of Mr. Seagroves around 9:30 or 10:00 p.m. on the night the victim was killed. They went "riding in [his] Bronco" for most of the night and the next day. Mr. Nunley was uncertain about specific times and recalled that he was drinking.

Jake Baum testified that he had known Petitioner since the seventh grade. He did not testify at trial because he was in the military at the time and stationed in Washington State. He was not permitted to leave service to testify at trial. On the night of January 7, he was going from his house in Winchester to take his girlfriend, Kristen King, home. At around 9:30, Petitioner "pulled [him] over." Mr. Baum pulled in to a church parking lot at Altamont, and got into the car with Petitioner. Mr. Baum's girlfriend stayed in his car. According to Mr. Baum, Petitioner wanted to "smoke a joint" but neither of the men had rolling papers. Petitioner asked for Mr. Baum's sister's telephone number. Mr. Baum

told Petitioner he needed to take his girlfriend home and went back to his own car. Petitioner went "toward Josh Seagroves' house." Mr. Baum was sure that it was between 9:00 and 10:00 p.m. because he "had to be in Winchester by 10:00."

Phillip Clay testified that he gave a statement to Chief Deputy Lonnie Cleek on March 2, 2007, when he was in jail. Mr. Clay testified, over objection, that he told Deputy Cleek that he was riding in the backseat of a car with Dana Frederick and Dewayne Lane at some point after the victim was killed. Mr. Lane was driving and Ms. Frederick was sitting in the passenger seat. The couple was arguing. During the argument, the car started to swerve, and Mr. Lane reached over and pushed Ms. Frederick's face. She said, "[T]ouch me again, and you'll wind up dead just like [the victim]. F—with my daddy, f—with Big Eck." Mr. Clay recalled that Ms. Frederick's father's name was "Eck." Mr. Clay was not a witness at trial.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In a written order, the post-conviction court granted relief, finding that trial counsel were ineffective.

The State filed a timely notice of appeal.

*Analysis*

On appeal, the State insists that the record does not support the "essential factors upon which the court based its finding of ineffective assistance of counsel" and that the post-conviction court failed to utilize the proper legal analysis to support the findings. The State argues that the post-conviction court's judgment should be reversed and remanded and the petition for post-conviction relief dismissed with prejudice. Petitioner insists that the post-conviction court correctly determined that his petition warranted post-conviction relief.

*Post-conviction Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result, *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6

S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

In the order granting relief, the post-conviction court recounted the issues raised by Petitioner as follows: (1) trial counsel failed to move to suppress the photographic lineup used when Mr. Braden identified Petitioner; (2) trial counsel failed to notice the misidentification of Petitioner at trial by Ms. Hill; (3) trial counsel failed to argue that Ms. Hill could not identify Petitioner after the incident; (4) trial counsel failed to request a jury instruction on identity; (5) trial counsel failed to object to the photographic lineup at trial; (6) the evidence does not support the convictions; (7) trial counsel failed to call alibi witnesses; and (8) the trial proceeding was flawed. The post-conviction court determined that Petitioner's "allegation that he did not receive effective assistance of counsel at the jury trial *was* supported by clear and convincing evidence at the post-conviction hearing" (emphasis added). The post-conviction court pointed to the fact that there was "no other evidence relating the Petitioner to the crimes except the identification by Rebecca Hill and Kirk Braden," placing "great emphasis on the credibility and sufficiency of the identifications." The post-conviction court went on to comment that:

> The jury clearly relied on the identification of the Petitioner by Rebecca Hill and Kirk Braden.
>
> It was testified to at trial that Rebecca Hill failed to identify the Petitioner in a photo lineup immediately after the crimes. It was only at a later time did Ms. Hill identify the Petitioner. At trial, Ms. Hill improperly identified the Petitioner on a lineup, actually identifying someone else. This misidentification was not noticed or argued to the trial jury by trial

counsel. Trial counsel did not seek to suppress Ms. Hill's identification of the Petitioner. Ms. Hill is now deceased.

Kirk Braden was shown a single photo lineup of the Petitioner by former Grundy County Sheriff, Brent Myers. Single photo lineups have consistently been held to be unconstitutional by our appellate courts. Mr. Braden obviously identified the Petitioner. Trial counsel failed to move to suppress the single photo lineup or object to it as well.

Trial counsel also failed to request that the trial judge charge the jury on identify, found in [Tennessee Pattern Jury Instruction] 42.05. Trial counsels' actions at trial precluded the appellate court to consider the issue of identity due to the waiver said actions constituted.

All of these actions or inactions by trial counsel constitute ineffective assistance of counsel, thus denying the Petitioner his constitutional rights to trial. Again, the court is considering the aforementioned issues of identification with extreme weight, based contextually with the fact that identification alone is all that ties the Petitioner to the crimes. If any other evidence whatsoever existed, then the flaws with the identification of the Petitioner would likely not be as important and fundamental to ensuring that the Petitioner receive a constitutionally fair trial.

The post-conviction court determined that trial counsels' failure to call certain alibi witnesses was most likely a strategic decision and, as such, did not rise to the level of ineffective assistance of counsel. As a result of the post-conviction court's findings, the post-conviction court granted post-conviction relief and ordered a new trial.

At the outset, we note that in the order granting relief, the post-conviction court did not articulate the application of the *Strickland* analysis as to each specific allegation presented in the post-conviction petition. Further, our review of the issues raised is complicated by the post-conviction court's analysis of the issues presented in the post-conviction petition in the aggregate. Ordinarily, this Court undertakes review of the grant or denial of a post-conviciton petition by examining each individual allegation of ineffective assistance of counsel separately. As such, our opinion will follow this format.

*Identity*

*1. Trial Counsels' Failure to Challenge Impermissibly Suggestive Lineup*

The State argues that the post-conviction court improperly determined that trial counsel were ineffective for failing to challenge the identification of Petitioner by Mr. Braden. Petitioner insists that the post-conviction court properly determined that the "one photo line-up" was improper because it was impermissibly suggestive, relying on *State v. Tyson*, 603 S.W.2d 748 (Tenn. Crim. App. 1980), for the proposition that no court has approved the practice of showing a single photo to a victim.

In *Simmons v. United States*, 390 U.S. 377 (1968), and *Neil v. Biggers*, 409 U.S. 188 (1972), the Supreme Court discussed pretrial identifications by photographs. In *Simmons*, the Court held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384. In *Neil*, the Court established a two-part analysis which the trial court must apply to determine the validity of a pretrial identification. 409 U.S. at 198-200. First, the trial court must determine whether the identification procedure was unnecessarily suggestive. *Id.* at 198. Next, if the trial court determines that the identification was unnecessarily suggestive, it must then consider whether, under the totality of the circumstances, the identification procedure was nonetheless reliable. *Id.* at 199. "[A] photographic identification is admissible unless, based upon the totality of the circumstances, 'the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the accused] was denied due process of law.'" *State v. Hall*, 976 S.W.2d 121, 153 (Tenn. 1998) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)). In Tennessee, it is unnecessary to apply the totality of the circumstances test described in *Biggers* if the trial court determines that the identification procedure was not unnecessarily suggestive. *See State v. Butler*, 795 S.W.2d 680, 686 (Tenn. Crim. App. 1990) (declining to apply the totality of the circumstances test when a lineup was not found to be unnecessarily suggestive).

At trial, Mr. Braden testified that he gave police a description of Petitioner, the hat he was wearing, and the car he was seen driving. Petitioner was identified as a suspect. Officers learned that Petitioner's mother owned a car like the one described by Mr. Braden. When confronted by officers, Petitioner's mother confirmed Petitioner was driving the car on the night of the victim's death. Mr. Braden testified at trial that he went to the police station a few days after the incident where he identified Petitioner from a photograph. The following exchange took place at trial:

> [Counsel For Defendant]: [D]id they show you one photograph or a whole bunch of photographs?
> [Mr. Braden]: A lot of photos.
> [Counsel for Defendant]: A lot of photos?
> [Mr. Braden]: Yeah.

[Counsel for Defendant]: How many photos?

[Mr. Braden]: I couldn't tell you how many. There was a stack.

[Counsel for Defendant]: All right. Now, I take it, out of those photos, you picked one of the photos, didn't you?

[Mr. Braden]: Yeah. I did.

[Counsel for Defendant]: Was there ever a live line-up where you put them behind you and you picked out live, living people? Was there anything like that?

[Mr. Braden]: He showed me the first photo and I identified him.

[Counsel for Defendant]: All right. Did they show you the first photo - -

[Mr. Braden]: He showed me several.

[Counsel for Defendant]: - - before he showed you the other photos? Do you remember? In other words, did the sheriff come up and just show and say is this the man? Is that what he did?

[Mr. Braden]: He come up and asked me, yes, is this the man who done it?

[Counsel for Defendant]: Okay. With just one photo?

[Mr. Braden]: He showed me three or four.

[Counsel for Defendant]: Was the photo you identified the first photo he showed you or the second or the third?

[Mr. Braden]: I identified the first one right off the - -

[Counsel for Defendant]: Okay. You identified the first one he showed you?

[Mr. Braden]: Yes.

Sheriff Myers testified at trial that Mr. Braden came to the office without an appointment. "He came to the sheriff's office hunting me, and he actually went inside the building, and they sent him out to the trailer [where the investigator's office was located]." When Mr. Braden came in to the investigator's office, "all of these pictures were on the desk . . . because we had to cut these pictures out [to prepare the photographic lineup]." When Mr. Braden sat down in the "metal chair that was to the right of . . . the desk[,] . . . he pointed at the picture and told me that that picture was the one that had [done] it." Sheriff Myers then "handed Mr. Braden all of the photographs and told him to make sure that he had picked out the right photograph, and Mr. Braden again identified the [petitioner]." *Adam Braseel*, 2010 WL 3609247, at *4. This Court's review of the factual basis for the conviction in the opinion on direct appeal is consistent with our review of the trial transcript.

The post-conviction court's finding that Mr. Braden was shown a "single photo lineup" by the sheriff is not supported by the trial transcript. Mr. Braden's trial testimony and the trial testimony of the sheriff showed that Mr. Braden was shown more than one photograph. Petitioner's photograph was the first picture in a stack of photos that Mr. Braden saw when he showed up early at the sheriff's office and before the photos could

- 10 -

be arranged in a photo array. Prior to that time, he had provided a description of Petitioner, his car, and the hat he was wearing on the night of the murder, enabling him to make the identification of Defendant so quickly once he was shown a photograph. Moreover, Petitioner did not present any testimony at the post-conviction hearing to contradict the facts surrounding the identification of Petitioner by Mr. Braden as presented at trial. Instead, Petitioner relied on the trial transcript introduced at the hearing as an exhibit and argument of post-conviction counsel. Accordingly, the evidence in the record preponderates against the post-conviction court's finding that Mr. Braden's identification resulted from an unnecessarily suggestive single-photo lineup.

### 2. Trial Counsels' Failure to File Motion to Suppress

The State insists that the post-conviction court failed to analyze the failure of trial counsel to file a motion to suppress his identification with the proper legal framework. Specifically, the State argues that any motion to suppress would have been without basis and, as such, trial counsel cannot now be held ineffective for failing to file a motion to suppress. Petitioner maintains that trial counsel should have filed a motion to suppress prior to trial and that trial counsel was ineffective for failing to do so.

This Court has previously addressed the evidence necessary at a post-conviction hearing in order to demonstrate that counsel's failure to file a motion to suppress prejudiced the petitioner:

> It is well settled that when a [p]etitioner in post-conviction proceedings asserts that counsel rendered ineffective assistance of counsel by failing to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the post-conviction hearing; otherwise, [p]etitioner asks the [c]ourt to grant relief based upon mere speculation. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. 1990). The same standard applies when a [p]etitioner argues that counsel was constitutionally ineffective by failing to file pre-trial motions to suppress evidence. In order to show prejudice, [a] [p]etitioner must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 687). In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing.

*Terrance Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011), *no perm. app. filed*. Thus, "[i]f a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to . . . file a motion

to suppress[,] . . . the petitioner is generally obliged to present . . . the [evidence supporting his claim] at the post-conviction hearing in order to satisfy the *Strickland* prejudice prong." *Demarcus Sanders v. State*, No. W2012-01685-CCA-R3-PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. Nov. 8, 2013), *perm. app. denied* (Tenn. Mar. 17, 2014); *see also Craig Abston v. State*, No. W2014-02513-CCA-R3-PC, 2016 WL 3007026 (Tenn. Crim. App. May 17, 2016), *perm. app. denied* (Tenn. Aug. 18, 2016).

In this case, the Petitioner failed to demonstrate that a motion to suppress his identification would have been successful had it been filed. The only argument in the record indicating that the indentification procedure was impermissibly suggestive is the Petitioner's own claim and post-conviction counsel's statements. Because we determined above that the identification of Petitioner by Mr. Braden was not impermissibly suggestive, we conclude there would have been little likelihood of success if trial counsel had filed a motion to suppress. Further, Petitioner admits that both Ms. Hill and Mr. Braden were able to identify him from photographs and at trial. Moreover, and significantly, neither trial counsel testified at the post-conviction hearing. Without the testimony of trial counsel, we cannot determine whether the decision was a part of trial counsels' trial strategy. This Court may not speculate about the substance of the testimony of a potential witness whose testimony was not offered at the post-conviction hearing. *Black*, 794 S.W.2d at 757. Based on the record before us, we are unable to determine that a motion to suppress would have been granted. The Petitioner has failed to show that he was prejudiced by any alleged deficiency as required by a proper *Strickland* analysis. Post-conviction counsel's argurment is all that is contained in the record, and that equates to no proof at all. The post-conviction court improperly concluded that Petitioner received ineffective assistance of counsel for trial counsels' failure to file a motion to suppress.

### *3. Identification of Petitioner by Ms. Hill*

Next, the State argues that the post-conviction court improperly found that Ms. Hill failed to identify Petitioner from the lineup and then actually misidentified Petitioner at trial. Petitioner disagrees.

As stated previously, when this Court undertakes review of a lower court's decision on a petition for post-conviction relief, the lower court's findings of fact are given the weight of a jury verdict and are conclusive on appeal absent a finding that the evidence preponderated against the judgment. *Black*, 794 S.W.2d at 755.

With respect to Ms. Hill's identification of Petitioner prior to trial, the post-conviction court improperly found that Ms. Hill "misidentified" Petitioner both prior to trial and at trial. Again, we determine that the evidence preponderates against the findings of the post-conviction court because the trial transcript of Ms. Hill's testimony

clearly demonstrates otherwise. Chief Deputy Cleek testified at trial that the first time he went to talk with her, Ms. Hill was in no position to either give a statement or look at pictures because she was unconscious. At some point after Ms. Hill was released from the hospital, she came to the sheriff's department to view the photographic lineup and "rather quickly" identified Petitioner. *Adam Clyde Braseel*, 2010 WL 3609247, at *4. The testimony from Ms. Hill at trial shows that she "went to the jail" and identified Petitioner in "some pictures." At that point during the trial testimony, Ms. Hill identified Petitioner in open court as the perpetrator.

We acknowledge that post-conviction counsel also argued at the hearing that Chief Deputy Lonnie Cleek incorrectly identified Petitioner's photograph in the lineup at trial as the "third from the right" when it was allegedly the "third from the left." Petitioner took issue with the fact that trial counsel did not object during trial and did not raise this issue on appeal. However, Petitioner did not present any witnesses, including himself or either trial counsel, at the hearing to support this argument. Argument from counsel does not amount to proof. *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). Moreover, the photographic lineup does not appear in the technical record in either the post-conviction or trial transcript, so we are unable to ascertain whether any of the witnesses truly misidentified Petitioner at trial. Where the record is incomplete, an appellate court is precluded from considering the issue. *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988); *see also* Tenn. R. App. P. 24(b). We determine that the evidence at the post-conviction hearing preponderates against the findings of the post-conviction court. The post-conviction court improperly granted relief by finding that trial counsel were ineffective.

*4. Jury Instruction*

Petitioner takes issue with trial counsels' failure to request a jury instruction regarding the reliability of eyewitness identification. The State concedes that trial counsel should have requested such an instruction. However, the State argues that the post-conviction court utilized the improper analysis of the claim and that the lack of the jury instruction was harmless. *See State v. Dyle*, 899 S.W.2d 607, 612 (Tenn. 1995).

The right to trial by jury is guaranteed by the United States and Tennessee constitutions. U.S. Const. amend. VI; Tenn. Const. art. I, § 6. Therefore, "a defendant has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000) (citing *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). Accordingly, trial courts have a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986) (citing *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975)).

In *Dyle*, our supreme court held that the pattern jury instruction on eyewitness identification used up to that point was not adequate in cases where identity of the defendant is a material issue and set forth a new, more detailed instruction to be given in those situations. 899 S.W.2d at 612. The supreme court held that identity is a material issue "when the defendant puts it at issue or the eyewitness testimony is uncorroborated by circumstantial evidence." *Id.* n.4. The instruction is as follows:

> One of the issues in this case is the identification of the defendant as the person who committed the crime. The [S]tate has the burden of proving identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression by the witness, and its value may depend upon your consideration of several factors. Some of the factors which you may consider are:
>
> (1) The witness' capacity and opportunity to observe the offender. This includes, among other things, the length of time available for observation, the distance from which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness;
>
> (2) The degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness'[s] own recollection;
>
> (3) The occasions, if any, on which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with the identification at trial; and
>
> (4) The occasions, if any, on which the witness made an identification that was consistent with the identification at trial, and the circumstances surrounding such identifications.
>
> Again, the [S]tate has the burden of proving every element of the crime charged, and this burden specifically includes the identity of the defendant as the person who committed the crime for which he or she is on trial. If after considering the identification testimony in light of all the proof you have a reasonable doubt that the defendant is the person who committed the crime, you must find the defendant not guilty.

*Id.*; *see also* 7 T.P.I.—Crim. 42.05 (19th ed. 2015). The *Dyle* Court adopted the above-quoted identity instruction over a more expansive instruction to avoid "impermissibly

comment[ing] on the evidence; thus, invading the province of the jury." *Dyle*, 899 S.W.2d at 612.

In a case so heavily dependent on the identity of the perpetrator and so lacking in physical evidence connecting Petitioner to the crime, we agree with the post-conviction court, the State and Petitioner that Petitioner's identity was a material issue at trial and that trial counsels' failure to request a jury instruction on identity was certainly deficient. The post-conviction court's order found that trial counsels' failure to request the jury instruction "precluded the appellate court to consider [sic] the issue of identity due to the waiver said actions constituted."

However, the post-conviction court did not perform the proper prejudice inquiry. In order to show prejudice at the post-conviction level, Petitioner is required to establish that there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Goad*, 938 S.W.2d at 370 (quoting *Strickland*, 466 U.S. at 694). Thus the post-conviction's court's failure to perform a proper prejudice analysis results in error.

That said, we must determine whether we should remand the case to require the post-conviction court to apply the proper legal standard or whether the state of the record enables us to apply the standard and adjudicate the prejudice issue in this appeal. Petitioner did nothing to contradict the trial record's demonstration of what occurred relative to the absence of the *Dyle* instruction. He took no steps to articulate, other than through nonevidentiary argument of post-conviction counsel, how the failure to request the instruction prejudiced Petitioner. For this reason, we will review the prejudice issue de novo.

To do so, we look to the non-exclusive list of factors promulgated by *Dyle* to assess the probable result of the jury's use of the instruction had it been given. Applying these factors, the trial record contains evidence that leads us to conclude that no probability existed that the jury would have utilized a *Dyle* instruction to refute the identification testimony provided by Ms. Hill and Mr. Braden. Although Petitioner may have been previously unknown to the witnesses, these witnesses had a substantial and prolonged opportunity to observe the offender amid adequate lighting and from close distances. The witnesses expressed certainty as to offender's identity and did so within a short time after the crimes were committed. Contrary to argument of post-conviction counsel upon which the post-conviction court apparently relied, the record does not reflect that either witness "mis-identified" or failed to identify Petitioner as the offender. The record reflects no circumstances surrounding the pretrial identifications that would derogate from those identifications or the witnesses' identifications at trial. The focus of the *Dyle* instruction is the competency of eyewitnesses, not their veracity or truthfulness.

Having reviewed the facts in light of the *Dyle* factors, we hold that no probability exists that the result of the trial would have been different. Therefore, we reverse the post-conviction court's judgment on this issue.

## *Alibi Witnesses*

In the petition for relief, Petitioner sought relief for trial counsels' failure to call certain alibi witnesses. Petitioner went on to present multiple alibi witnesses at the post-conviction hearing, but did not raise this issue on appeal. Issues raised in the pro se petition and not raised on appeal are deemed abandoned. *See Jeffrey L. Vaughn v. State*, No. W2015-00921-CCA-R3-PC, 2016 WL 1446140, at *2 n.4 (Tenn. Crim. App. Apr. 12, 2016), *perm. app. denied* (Tenn. Aug. 19, 2016); *Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

## *Conclusion*

Because we have determined that the evidence preponderates against the factual findings of the post-conviction court and because Petitioner has failed to prove that he received ineffective assistance of counsel, we reverse the judgment of the post-conviction court. Petitioner's convictions are reinstated.

_____
TIMOTHY L. EASTER, JUDGE

- 16 -